Losing-, J.,
delivered the opinion of the court:
The petitioner was a captain and assistant quartermaster in the United States volunteers, and he prays the judgment of the court that he should be allowed a credit of five thousand dollars in settling his accounts for that sum, lost by him, without fault or neglect on his part, while in the line of his duty.
The facts proved are, that in the month of November, 1864, the petitioner was acting as chief quartermaster of the Twentieth Corps, then apart of General Sherman’s army at Atlanta; that the army was moving from that city on its march to the sea, and the petitioner, in the performance of his duty, required, money to pay off men and make purchases for and on the march: he had under his command at the time a great many hundred wagons and mules, and everything relating to supplies and transportation was under his immediate supervision. His only means of procuring money was by cashing a draft of $5,000 on the depository at Louisville, drawn by General L. Eaton. He applied for the money to General Bullock, chief commissary of the Twentieth Army Corps, who, as such, usually had considerable money on hand, and was in the habit of supplying the quartermasters of the corps with money on drafts. General Bullock informed him he had turned over all the money he had to Captain Blair, post commissary, and proposed to the claim-. *454 ant to go with, him to Captain Blair to procure from him the money. General Bullock and the claimant, followed by his orderly, rode to Captain Blair’s quarters, then in the railroad bank building in Atlanta; and there the claimant obtained five thousand dollars in bills for his draft of five thousand dollars. Captain Blair wrapped the money in a piece of paper which had his official heading of post commissary, and then wrapped it again in brown paper tied round with red tape, and it formed a package of the size of the bills three or four inches thick, The claimant placed the package in the breast of his uniform coat, where was its only pocket, buttoned up his coat and left the office with General Bullock. At the time there were many persons in the office; officers were engrossed with their duties, and everything was in the commotion and hurry of the start of the army. General Bullock and the claimant, followed by his orderly, rode rapidly about three-quarters of a mile to General Bullock’s quarters, where he stopped, and the claimant and his orderly rode on to his quarters, about a quarter of a mile beyond. When turning from the street into the encampment the claimant put his hand in his breast and suddenly exclaimed he had lost the money. He dismounted and searched himself, and found the money gone: he ordered his orderly to ride at speed back to Captain Blair’s quarters and ascertain if the money was there. The orderly rode to Captain Blair’s, but could find or learn nothing of the money. The claimant himself returned on his track to Captain Blair’s, seeking the money, but without any success. He immediately reported his loss to General Asmuften, then inspector general » of the Twentieth Army Corps, and who had charge of the information corps, and requested him to employ his spies and scouts in seeking for the money; and this was done. He also caused notices of the loss, with an offer of reward, to be posted, and at once reported the loss to the commanding general of his corps, General Slocum, who informed him that he would do all he could for him, which was to order a board of officers to hear and report on the ca.se; and this was done. The money was not recovered.
The evidence in the case establishes a high character for the claimant, both as to integrity and habitual care in the performance of official duty; and, we think, on the facts, his action in this matter was without fault or neglect on his part. He car- *455 riecl tbe money in tbe way snob officers generally carry money-on such occasions, and be bad no other way of carrying’ tbe money than in tbe breast of bis coat, where its only pocket was. It was inferred by witnesses that, in putting the money into his breast, be did not put it into tbe iioclcet there; but this was inferred merely from tbe subsequent loss of tbe money, and there was no evidence as to tbe fact. The report of tbe board of officers contained tbe suggestion, probably, because made by witnesses before them. But that report found that tbe money was lost without any carelessness, neglect, or want of due caution on tbe part of Captain Whittlesey, and that no blame attaches to him in consequence of such loss, and in that we concur.
A decree, that be be credited with tbe $5,000 lost, is ordered to be made.