Milligan, J.,
delivered tlie opinion of the court:
The petition in this case is filed under the Act May 9th, 1806, (14 Stat. L., p. 44,) authorizing this court, in proper cases, to enter a decree in favor of disbursing officers who may be claimants, directing- the accounting- officers of the Treasury to allow to such officer the amount so decreed as a credit in the settlement of his accounts.
The facts on which the case rests are few and plain.
The claimant was a captain in the Corps of Fmgineers, and a major by brevet in the Army of the United States, and as such officer he had charge of the work for the improvement of the mouth of the Mississippi River. T.he money appropriated for that purpose was under his control, and he was charged with its disbursement. His office was in the city of New Orleans, and, as he alleges in his petition, there was under his charge and engaged in said work a steam-dredge boat called tbe Essayons, employed on the work at Pass á l’Outre, Louisiana, one hundred and ten miles below the city; and on the 30th of June, 1869, there was due the crew of said boat the sum of $2,119.35, which it was the duty of the claimant to payas soon as practicable.
At that time there was no regular communication between New Orleans and Pass a. l’Outre. All communication depended on steamboats as, from time to time, they passed from one place to the other.
On the 10th of June, 1869, the claimant, in discharge of his *514 official duty, drew bis check against tbe money appropriated for tbe work under bis control, on deposit with tbe assistant treasurer of tbe United States at New Orleans, and sent tbe check by bis assistant (Lieutenant Payne) to tbe sub-treasury to be cashed. Payne received on tbe check $2,119.35, and brought it back tbe same day, and placed it in tbe office-safe furnished by tbe United States for the use of tbe engineer’s office.
George T. Dexter was at that time tbe chief clerk in tbe office, and bad charge of tbe key of tbe safe. His duties as chief clerk made it necessary for him to have free access to tbe safe, as tbe books and valuable papers of the office were kept in it.
The money was placed in tbe safe late in the afternoon of Saturday, tbe 10th of June, 1869, and tbe chief clerk ordered to be in tbe office by 7 o’clock on tbe next morning, as Payne would call at that hour to get tbe money, to take it down tbe river to pay off tbe bands. At tbe appointed time tbe next morning Payne was at tbe office, but Dexter was not there. The safe was locked, and search was at once instituted for Dexter, but he could not be found. Detectives were called in, and tbe safe broken open, and tbe fact ascertained that tbe money was gone. Every diligence in claimant’s power was used to secure tbe arrest of bis chief clerk and to recover tbe money, but without success. Neither Dexter nor tbe money have been beard of since.
Tbe claimant found Dexter in the office when be assumed its duties. He bad been employed in tbe office'for about three years before tbe 10th of July, 1869, and up to that time bore tbe reputation of a faithful and trustworthy man.
The act under which this suit is prosecuted makes it tbe duty of tbe court to ascertain whether the loss complained of 'was without tbe “fault or neglect” of tbe officer. Tbe words fault or neglect used in tbe statute have been held not' to be technical words, but to be understood in their common and popular signification. (Malone’s Oase, 5 O. Gis. B., 486.)
Officers of tbe United States entitled to tbe benefit of this act are agents of tbe Government, and bound to that reasonable care and diligence which a prudent man would exercise in bis own private affairs, or exact of bis agent intrusted with their management. (lb.)
*515 The facts of this case cast no suspicion whatever on the claimant, nor do they show him wanting in care and diligence, lie did what any prudent man would have done in his own private affairs under the same circumstances, and cannot therefore be held guilty of negligence.
The claimant was compelled to avail himself of the uncertain means of reaching the hands whom it was his duty to pay, and when an opportunity offered he had to start at the hour appointed by the boat; and to meet this state of things, he drew the money in the evening of the day before he was compelled to start, and placed it in the safe, which, according to the proof, was necessarily under the control' of the chief clerk, who for three years before had borne the reputation of an upright and trusty man. It was lost, and, we think, in view of the whole case, while the claimant was in the line of his duty, and without his fault or neglect; and we therefore hold that a decree be entered directing the accounting officers of the United States Treasury to give the claimant a credit, in the settlement of his accounts, of- $2,119.35, lost as before shown.