Peelle, Ch. J.,
delivered the opinion of the court:
The claimant, a paymaster in the United States Army, seeks relief by way of credit in the settlement of his accounts *349 for money lost through the theft of a messenger, as he avers, without fault or negligence on his part.
The relief is sought under paragraph 3 of Revised Statutes, section 1059 and section 1062, which provide as follows:
“ Sec. 1059. * * * Third. The claim of any paymaster, quartermaster, commissarjr of subsistence, or other disbursing officer of the United States, or of his administrators or executors, for relief' from responsibility on account of capture or otherwise, while in the line of his duty, of Government funds, vouchers, records, or papers in his charge, and for which such officer was and is held responsible.
“ Sec. 1062. "Whenever the Court of Claims ascertains the facts of any loss by any paymaster, quartermaster, commissary of subsistence, or other disbursing officer in the cases hereinbefore provided, to have been without fault or negligence on the part of such officer, it shall make a decree setting forth the amount thereof, and upon such decree the proper accounting officers of the Treasury shall allow to such officer the amount so decreed, as a credit in the settlement of his accounts.”
Upon the facts found three questions arise. First, was the money lost by the claimant by “ capture or otherwise, while in the line of his duty ? ” Second, was such loss “ without fault or negligence on the part of such officer? ” Third, is the claimant concluded from the relief sought by reason of having paid into the Treasury of the United States the amount of money lost ?
The first question, respecting the manner of loss, has been answered by this court. That is to say, loss by “ capture or otherwise ” has been construed to mean, not only loss by capture and kindred ways under the rule of ejusdem generis interpretation, but the words “ or otherwise ” have been construed to apply to losses occurring in any other way while the officer was in the line of duty and free from fault; such as loss by breaking a safe in the daytime (Clark’s case, 11 C. Cls. R., 698); loss from a train while in motion (Smith’s case, 14 C. Cls. R., 114); failure of bank (Hoyle’s case, 21 C. Cls. R., 189); loss by fire (Hoyle’s case, 21 C. Cls. R., 300), while relief has been granted in several other cases for loss by robbery.
*350 Therefore, the construction of the words “ or otherwise ” in the more limited sense invoked by the claimant is not an open question in this court.
As to whether the loss occurred while the claimant was in the line of duty, the facts found show that, at the time, he was on his way to Fort Barancas to pay the troops stationed there, and that being service “ in the line of his duty,1’ was he, while so engaged, negligent in the care of the money intrusted to him for that purpose ? Here a distinction must be made between the official relation of a paymaster with his clerk and that with his messenger. That is to say, a clerk, in his relations to the paymaster, occupies a position of trust and confidence very different from that which exisls between a paymaster and his messenger. A paymaster may, in the discharge of his duties, intrust a hitherto worthy clerk in various ways without being liable for negligence, while to repose the same trust and confidence in a messenger would render him liable for negligence.
In the present case the claimant was not negligent in directing the messenger to carry his satchel containing the money to the depot, but when he permitted him to get out of his sight and become separated, as set forth in finding v, the messenger was then beyond his control, and, being beyond his control, it’ can not be held that the loss occurred without fault or negligence on the claimant’s part.
Nor was the claimant diligent in discovering the loss. If he had been, he would have examined his satchel immediately upon finding the messenger instead of waiting, as he did, until the next day. Had this course been pursued, there can be little doubt but that the money would have been discovered.
The claimant cites a number of cases which he contends are somewhat analogous to the present case, among which are the Glenn case (4 C. Cls. R., 501), where the money was stolen by soldiers; the Howell case (7 C. Cls. R., 512), where the loss occurred through the theft of a clerk; the Christian case (7 C. Cls. R., 431), where the loss occurred through the plundering of a bank at the time of the Quan-trell massacre, and other cases. But they are unlike the present case in this: That here the loss occurred through the *351 vlieft of a messenger with* whom the claimant had voluntarily intrusted the money and then permitted him to become separated from him.
With this conclusion we might stop here, but we will notice the third question — i. e., By paying the money into the Treasury of the United States, as averred in ihe petition, is the claimant therebj'- concluded from the relief sought?
Tn the Hall case (9 C. Cls. R., 274) the court held that to entitle an officer to relief he must not only have been, but still be, responsible to the Government for what he lost, the effect of a decree in such case being simply to release the officer from existing liability. But in the case of Smith (14 C. Cls. R., 114) that ruling ivas modified upon the theory that under the general practice of the Treasury Department, the accounts of paymasters in the United States Army were never closed. On appeal (105 U. S., 620), while that case was reversed on the question of the statute of limitations, the court in its opinion respecting the time when the officer should have applied for relief in this court, said:
“ It sufficiently appears in this case that claimant’s right was authoritatively denied when he was ordered by the Paymaster-General to pay the money, and that then was the proper time to apply for the protection of the Court of Claims by asking its decree that he should be credited on his account with that sum.”
From that language standing alone.we might be justified in holding in the present case that- relief should have been sought by the claimant in this court before paying the money into the Treasury. But in that same case the court also said:
“ Nor does it appear that there was any balance of money of the Government in the hands of Smith either when he brought suit or when he obtained judgment, on which it could be applied as a credit.
“ It is, therefore, a case in which the judgment amounts to a recovery of the sum once paid by claimant, and as the statute gives no authority to make this effectual by repayment out of the Treasury, it is to be collected by permitting him to retain it out of a future balance in his hands.”
Interpreting the language there used this court is supported in its holding that the accounts of paymasters, never *352 being closed, the accounting officers may secure immediate payment of balances due from them and yet open and readjust their accounts,at any time. But as the loss here complained of was not without fault or negligence on the part of the claimant, he is not entitled to the decree prayed for, and his petition is therefore dismissed.