HowRT, Judge,
delivered the opinion of the court:
This is a suit by a pay director in the navy for relief under "Revised Statutes, sections 1059, 1062, from responsibility for the loss of $10,000 of government funds for which the officer was responsible and for which sum plaintiff has been charged in his official accounts by the accounting officers of the Treasury. The shortage occurred while the plaintiff was on duty as paymaster of the New York Navy-Yard through the defalcation of one Thomas Costelloe, who was at that time chief clerk and cashier in the employ of the paymaster.
The statutes under which the relief is sought give the court jurisdiction to hear and determine, Revised Statutes, section 1059, * * *.
“ The claim of any paymaster, quartermaster, commissary of subsistence, • or other disbursing officer of the United States, or his administrators or executors, for relief from responsibility on account of capture or otherwise, while in the line of his duty, of government funds, vouchers, records, or papers in his charge, and for which such officer was and is held responsible.”
Revised Statutes, section 1062, provide that:
“ Whenever the Court of Claims ascertains the facts of any loss by any paymaster, quartermaster, commissary of subsistence, or other disbursing officer, in the cases herein-before provided, to have been without fault or negligence on the part of such officer, it shall make a decree setting forth the amount thereof, and upon such decree the proper accounting officers of the Treasury shall allow to such officer the amount so decreed, as a credit in the settlement of his accounts.”
It will be noted from the foregoing recitals that the court has acquired jurisdiction not under the reference by the Secretary of the Treasury under section 1063 of the Revised Statutes, 'but because plaintiff has voluntarily appeared and filed his petition for relief under statutes which confer the jurisdiction upon the court to give the necessary relief if the plaintiff shows he is entitled to relief. The jurisdiction is thus acquired independent of any reference by the Secretary of the Treasury.
*382 In direct actions on bonds of public officers by reason of neglect or breach of duty numerous cases have been before the court of last resort. There have been cases where public money has been destroyed by fire, shipwreck, earthquakes, and other overruling causes. In United States v. Prescott (3 How., 578), the defense was that the money sued for had been feloniously stolen without fault or negligence on the part of a receiver of public money, and where the receiver contended that he was liable only as a depositary for hire unless his liability was enlarged by the special contract to keep safely, which it was further contended was not the case. The court held that the law of bailment did not apply to such a case, and that every depositary received his office with full knowledge of its responsibilities, and in case of loss could not complain. In United States v. Morgan (11 How., 154), the bond of a collector was conditioned that he “ continue truly and faithfully, to execute and discharge all the duties of the said office.” The court characterized as an erroneous impression that the collector was acting as a bailee. In United States v. Dashiel (4 Wall., 182) the defense to the bond of a paymaster in the army for not accounting was that without any want of proper care and vigilance moneys had been stolen from him. But it was said that the theft or robbery, if satisfactorily proved, was not good. Substantially the same question arose in United States v. Keehler (9 Wall., 83), which was an action on a bond of a postmaster. The court reaffirmed the doctrine of the preceding cases, holding that the express contract measured the liability to pay. In Boyden v. United States (13 Wall., 17), the defense was that the receiver had been by irresistible force robbed of public money. Evidence tending to prove that the receiver had been suddenly beset in his office, thrown down, bound, and the public money in his possession violently taken from the officer was rejected as constituting no defense to suit on the officer’s bond. In Bevans v. United States (13 Wall., 56) the suit was upon a bond of a receiver. The court reaffirmed the rule announced in Prescott’s case, and declared that the obligation of the bond was not less stringent than that of a common, carrier, and in some respects greater. A question reserved from the decision in Bevan’s case arose in *383 United States v. Thomas (15 Wall., 337). That was an action on the bond of a depositary, and the special defense was that the moneys were seized by the Confederate authorities against the will and consent of the officer by the exercise of force which he was unable to resist. The court said that no ordinary excuse could be allowed for the nonproduction of money committed to disbursing officers’ hands, as they were special bailees subject to special obligations, and added that the decisions had not gone to the length of making officers liable in cases of overruling necessity. The court was of opinion that the Thomas case did not materially modify the previous decisions. In the late case of Smythe v. United States (188 U. S., 156), the import of the authorities was reviewed at great length, and it was held that there was a breach of the bond where treasury notes were charred, burned, and destroyed by fire without negligence on the part of the officer, his agents,- or employees.
But this is a suit under statutes which provide for a decree and of which the Supreme Court has said:
“ By a very curious provision the Court of Claims is authorized to establish a defense to a claim which claim the Government can only establish judicially in some other court.” (United States v. Clark, 96 U. S., 37.)
Cases have arisen from time to time in this court where relief has sometimes been granted and sometimes refused. (Glenn v. United States, 4 C. Cls. R., 506; Whittelsey v. United States, 5 C. Cls. R., 452; Malone v. United States, 5 C. Cls. R., 486; Howell v. United States, 7 C. Cls. R., 512; Hobbs v. United States, 17 C. Cls. R., 189; Stevens v. United States, 41 C. Cls. R., 344; and Penrose v. United States, 42 C. Cls. R., 34.)
It is, we think, a sound proposition that the statutes under which the court, on the petition of the plaintiff, has acquired jurisdiction were intended to-give disbursing officers a greater right to relief than they already possessed before these acts were passed.
They were passed to relieve innocent disbursing officers from the rigors of the law and the consequent judgment of courts of law, by allowing them to go into a court of equity,. *384 and, by establishing the fact that they were faultless, obtain a “ decree ” which would require the accounting officers to allow to such officer credit in the settlement of his accounts. The provisions in question are predicated upon the act of 1866, which did not lessen the legal liability of disbursing officers, nor give them generally greater legal rights than they possessed. The Court of Claims alone, acting as a court of equity, can administer the equitable provisions under which relief is here asked and award the specific redress authorized by the statute in and, only in exceptional cases. That is, where the officer has established the fact that his conduct has really been faultless. Before relief can be granted it must appear with reasonable degree of certainty from all the proof and circumstances of the case that the officer entrusted with public money has exercised watchfulness over the funds and such degree of care as fairly and equitably entitle him to a decree exonerating him from the obligation of his bond.
From the foregoing statement it is apparent that the responsibility of the court in this class of cases is very great. It is equally apparent that the court can not well undertake to formulate any general rule declaring what acts may carry exemption from liability. Each case must depend • upon those conditions and circumstances which necessarily arise out of the proof when presented. As, however, redress can only be had in exceptional cases there is at the outset a presumption of liability, and the burden of proof must rest upon the officer who has sustained the loss.
We pass then to the special contention of the plaintiff and to the circumstances involved in the contention that the confidence reposed by other, and higher officers of the Government in the clerk who made away with the funds for whose safe-keeping plaintiff became responsible justified this pay director in retaining the same clerk when the former paymaster was relieved and the present plaintiff took charge; that board duties called the plaintiff away from time to time to tlie seat of government, which made it necessary for him to leave all the cash and accounts in charge of the clerk, and that on account of the magnitude of the transactions of the *385 office plaintiff must be excused from proving the correctness of the entries in the cashbook at the end of each month.
It appears from the findings that plaintiff did not verify the monthly money statement officially required of him to be made on the 15th of each month for the preceding month from the total charges shown by the cashbook with the total cash on hand. There was an omission on his part to make the necessary comparison of the monthly money statement with the cash in hand. This omission enabled the clerk in charge of the books to select at the beginning of each quarter a number of genuine receipts which had already been paid and charged in the cashbook as an item of amounts paid to officers and separately entered on the pay roll for the preceding month against each officer’s individual account; and after erasing the true dates on these receipts, redating them all with the same false date, generally within the first ten days of the opening month of the new quarter, and recharging them a second time in the cashbook as having been again paid to the same officers upon the false date. For such false entry on the cashbook there would be no corresponding entry on the pay roll and the respective totals for the month and the quarter would not balance. The difference was the amount of the whole shortage. In order to conceal the false entry charged in the first month of the quarter the clerk would reduce the true entries in the cashbook in the last month of the same quarter by an amount equal to his entire shortage, and the totals of the cashbook and pay rolls for the quarter would thus be made to agree. They did not agree for the first or the last month of any quarter throughout the entire term of plaintiff’s tour of duty as paymaster. The difference aggregated $10,000.
It would be utterly inconsistent with the statutes which require plaintiff to give a bond to account for the funds, for this court now to hold that the obligation of the bond became satisfied by the confidence which the plaintiff put in his clerk and bookkeeper. It is no answer to say that other and higher officers reposed confidence in the same clerk and yet lost no public money by his peculations. Plaintiff was not justified in accepting their estimate of him to the extent of not keep *386 ing continually in touch with the accounts and of informing himself of their correctness notwithstanding the good character of his subordinate. To hold that an opportunity should be given to the clerk to falsify public accounts without requiring a bond from him at the outset, or keeping watch upon the entries on every roll as well as upon every book made necessary to disclose the true state of the amount of actual money on hand at any given time to the officer who had made himself responsible as well as to disclose the correctness of the amounts being charged to the Government would, in effect, leave the clerk alone liable to account for the public money without the emoluments of the office. The findings show that the plaintiff accepted explanations of erasures and made no further investigations, and among the altered receipts was the plaintiff’s own receipt for $859.95, which he drew in one month, but which had been checked and entered by the roll clerk on the pay roll of another month.
The fact that the navy regulations required pay officers to be responsible for the character and fitness of the clerks they nominate and to submit certificates showing the character and fitness of these persons did not relieve plaintiff from responsibility for the embezzlement of the clerk retained in office by him, even though the plaintiff took the clerk over from his predecessor. The navy regulation ivas not intended to relieve the officer from responsibility, but rather to throw around him all the safeguards considered by the department proper, not only for the benefit of the Government but for the protection of the pay director himself. But whatever the intention, such a regulation did not have the effect of so superseding the obligation imposed by law, arising out of the ordinary conditions of the bond which the paymaster was required to give, as to relieve the paymaster from accountability.
Public policy imposes upon every depositary the duty of exercising the highest degree of vigilance, and it is no excuse that duties elsewhere took the claimant away from his post leaving all the cash and accounts in charge of a mere clerk without any supervision or such inspection of the books *387 and funds as would reasonably insure the safe-keeping of everything in the absence of the responsible head. Nor do the findings establish that duties at the seat of government look the plaintiff away from his regular post enough to prevent him from giving his personal attention to the accounts and determining the true state of the business of the office..
The findings establish that when the plaintiff relieved his predecessor he gave receipts to cover the funds then on hand. Section 1559 of the regulations provides that: “In all cases of transfers of funds or supplies the receiving officer must state in the receipt given that he holds himself accountable to the United States for the sum or quantity received.” (U. S. Navy Regulations, 1900, p. 348; ib., p. 314, par. 1478.) Considering that it was the fault and neglect of the plaintiff to fail to carefully verify the accuracy of the official cashbook and the receipts of the officers which Costelloe was carrying over as vouchers for cash payments from month to month and from quarter to quarter, and that plaintiff accepted receipts from his predecessor as cash, the court is of opinion that plaintiff assumed responsibility for the correctness of the balances transferred to him. It is not established by the evidence that the amount of $2,987.86 entered and checked on the rolls for August in the accounts of plaintiff’s predecessor was actually taken by Costelloe at t^e time he made the false entry in the cashbook of $3,244.32 and at the time when he had changed the dates from August 31 to September 4, 1900, on the receipts. As plaintiff accepted the receipts as genuine vouchers for payments made to officers and included them in the receipt which he gave to his predecessor to cover the balances transferred to him,, the court must assume in the absence of positive proof that the officers’ receipts represented money. At all events, plaintiff assumed the responsibility for the genuineness of the-vouchers which came to him from his predecessor and he became responsible to account to the Government for the. amount, and the court so adjudges.
The petition for relief is denied and is, therefore, dismissed.