Antonio M. SERRANO

v.

The UNITED STATES.

No. 237–78.

United States Court of Claims.

Dec. 12, 1979.

Roger S. Fraley, Middleburg, Va., attorney of record, for plaintiff.

Thomas W. Trigg, U. S. Dept. of Justice, with whom was Acting Asst. Atty. Gen.,

Alice Daniel, Washington, D.C., for defendant. John W. Showalter, Washington, D. C., and Gary Elkins, of counsel.

Before FRIEDMAN, Chief Judge, NICHOLS and SMITH, Judges.

ON DEFENDANT'S MOTION FOR SUMMARY· JUDGMENT AND· PLAINTIFF'S CROSS–MOTION FOR SUMMARY JUDGMENT

EDWARD S. SMITH, Judge:

This military pay case is before the court on cross-motions for summary judgment. It is contended by plaintiff that the Secretary of the Navy acted arbitrarily, capriciously, and otherwise abused his discretion in withholding plaintiff's pay and in refusing to release plaintiff from liability for the loss of $15,992.20 of Government funds. The money disappeared on or about August 2, 1975, while entrusted to plaintiff as an agent-cashier aboard the U.S.S. *Forrestal.* Plaintiff further contends that the Secretary's refusal to release him from liability was not based on sufficient evidence, nor was there any showing that plaintiff was at fault or contributed to the loss. We disagree and find for defendant.

I.

Plaintiff, Antonio Serrano, enlisted in the United States Navy in February 1966 and had a good record prior to the occurrence of the events involved in this case. On Friday, August 1, 1975, plaintiff was serving as an agent-cashier petty officer aboard the U.S.S. *Forrestal,* then on Mediterranean station and in port at Naples, and his section had the duty in the Disbursing Office from 8 a. m. that morning until 8 a. m. on Saturday, August 2. As agent-cashier plaintiff held Government funds in an accountable status and paid and collected money as authorized. Plaintiff was assigned a safe for his use and the combination was supposed to be known only by

plaintiff. At about midnight or in the early hours of August 2, 1975, plaintiff checked the contents of his safe and states that everything balanced and was accounted for.

Later Saturday morning plaintiff returned to the Disbursing Office to turn in his balance sheet, which showed $35,696.22 on hand, after which he was entitled to go on leave from August 2 until August 4. Plaintiff stated that he then unlocked .his safe and found a substantial amount of money missing. He did not reveal the loss to anyone. He changed into civilian clothing, flew to Rome where he spent the night, and on the next morning he purchased a one-way ticket to Jacksonville, Florida. According to plaintiff, he expected to be held absolutely responsible for the missing money and went to Jacksonville to enlist the help of his family in raising funds for the purpose of replacing it, but was only partially successful. On August 7, 1975, plaintiff flew back to Italy and surrendered himself to naval authorities on August 8.

Meanwhile, plaintiff's failure to report for duty on August 5 was reported to the disbursing·officer but his absence did not raise concern until a tour party returned on August 6 and plaintiff was not a member of the party. The safe was forcibly opened on August 7 and it was determined that there was a total shortage of $15,992.20 in United States and Italian currency.

The Navy charged plaintiff with grand larceny and unauthorized absence. Also, pursuant to 5 U.S.C. § 5512, the Navy withheld a total of $5,845.92 from plaintiff's pay between the time the loss was discovered and the date of plaintiff's voluntary discharge from the Navy in August 1976. Initially, plaintiff was convicted of grand larceny by a general court-martial; however, on appeal this verdict was overturned. At his second court-martial, plaintiff was acquitted.

Serrano initiated administrative proceedings[1] to secure his relief from liability for

1. Pursuant to 31 U.S.C. § 95a (1976):

"Whenever (1) any disbursing officer of the Army, Navy, Air Force, or Marine Corps incurs

or has incurred a physical loss or deficiency of any Government funds, vouchers, records, or papers in his charge and (2) the Secretary of

the missing funds. The Secretary of the Navy declined to release him. Plaintiff also filed suit in the United States District Court for the Eastern District of Virginia seeking release of his back pay. The district court transferred plaintiff's case to this court, pursuant to 28 U.S.C. § 1406 (1976).

## II.

As a receiver of public money, plaintiff had, by his signature accepting the post as agent-cashier, assumed responsibility for the public money placed in his charge. As early as 1845, in the *Prescott* case, the Supreme Court was presented with the question "whether 'the felonious taking and carrying away the public moneys in the custody of a receiver of public moneys, without any fault or negligence on his part, discharged him and his sureties, and may be set up as a defence to an action on his official bond?'"[2] The Supreme Court decided that this was not a defense.

In that case Prescott had used ordinary care and diligence in taking care of the public monies. Under the law Prescott was strictly liable for the funds put in his custody. The Court explained its reason for so holding.[3]

> Public policy requires that each depositary of the public money should be held to a strict accountability. Not only that

he should exercise the highest degree of vigilance, but that "he should keep safely" the moneys which come to his hands. Any relaxation of this condition would open a door to frauds, which might be practised with impunity. * * *

## III.

It is well settled that where there is a legal action at law against a disbursing officer upon his bond, his liability is that of a common carrier and sometimes greater.[4] Over one hundred years ago, the Disbursing Officers Act became law and was intended to give disbursing officers a right to relief which right they did not possess prior to that time.[5] As this court stated in *Boggs*:

> * * * The provisions in question are predicated upon the act of 1866, which did not lessen the *legal liability* of disbursing officers, nor give them generally greater legal rights than they possessed. The Court of Claims alone, acting as a court of equity, can administer the equitable provisions under which relief is here asked and award the specific redress authorized by the statute *in and only in exceptional cases.* * * * [Emphasis in original. 44 Ct.Cl. at 383–84.]

■ The mitigating provisions were enacted to give further relief to disbursing officers; they were intended to relieve in-

the department concerned determines that such loss or deficiency occurred while the officer was in line of his duty and that such loss or deficiency occurred without fault or negligence on his part, the General Accounting Office shall relieve such officer of the liability for such loss or deficiency, or authorize the reimbursement, from any appropriation or fund made available for that purpose, of amounts paid by or on behalf of such officer in restitution of such loss or deficiency. Any determination made by the Secretary of the department concerned under this section shall be conclusive upon the General Accounting Office. No relief may be granted under this section with respect to any deficiency in the accounts of any disbursing officer which results from any illegal or erroneous payment. This section shall not deprive any disbursing officer of any right which he otherwise may have to obtain relief by any other means with respect to any loss or deficiency covered by this section."

2. *United States v. Prescott,* 44 U.S. (3 How.) 578, 587, 11 L.Ed. 734 (1845).

3. *Id.* at 588.

4. *Boggs v. United States,* 44 Ct.Cl. 367, 382 (1909).

5. Section 1062 of the Revised Statutes (2d ed. 1878) provides:

"Sec. 1062. Whenever the Court of Claims ascertains the facts of any loss by any paymaster, quartermaster, commissary of subsistence, or other disbursing officer, in the cases hereinbefore provided, to have been without fault or negligence on the part of such officer, it shall make a decree setting forth the amount thereof, and upon such decree the proper accounting officers of the Treasury shall allow to such officer the amount so decreed, as a credit in the settlement of his accounts."

nocent officers from the rigors of law and allow them to go into a court of equity. This, however, did not change the burden of responsibility that disbursing officers carry but, rather, gave them a chance for relief when in fact they were faultless. As the court stated.[6]

\* \* \* Before relief can be granted it must appear with reasonable degree of certainty *from all the proof and circumstances of the case* that the officer entrusted with public money has exercised watchfulness over the funds and such degree of care as fairly and equitably entitle him to a decree exonerating him from the obligation of his bond.

\* \* \* [I]t is apparent that the responsibility of the court in this class of cases is very great. \* \* \* Each case must depend upon those conditions and circumstances which necessarily arise out of the proof when presented. As, however, redress can only be had in exceptional cases there is at the outset a presumption of liability, and the burden of proof must rest upon the officer who has sustained the loss. [Emphasis supplied.]

As in *Boggs*, the issue before us is whether the disappearance of the money in plaintiff's charge occurred without fault or negligence on his part.

## IV.

Plaintiff contends that defendant improperly withheld his pay following the loss of the public funds. It is alleged by plaintiff that, although he was acquitted of theft, the Navy still believed in his guilt, and that his unauthorized absence from the ship following the theft, and his failure to report the theft immediately, were evidence supporting that belief.

Plaintiff contends that unless his absence and failure to report the theft were contributing factors to the loss of the public's money, thus showing negligence or fault on his part, he should be exonerated. There-

fore, according to plaintiff, the decision of the Secretary of the Navy not to grant plaintiff's request for relief under these circumstances is arbitrary, capricious, and an abuse of discretion, since it is mere speculation to say that plaintiff's actions were a cause of the loss.

We address each of plaintiff's contentions in turn.

■ At the time of Serrano's appointment, he agreed to assume liability for the loss of any funds entrusted to him. Thus, following the disappearance of the money on August 2, 1975, the Navy proceeded to withhold substantial amounts from plaintiff's pay checks. Plaintiff alleges that this surcharge was improper. As indicated in *Boggs*, plaintiff is presumed to be liable unless he can prove that he is without fault or negligence. The pertinent statute, 5 U.S.C. § 5512(a) (1976), mandates that "[t]he pay of an individual in arrears to the United States shall be withheld until he has accounted for and paid into the Treasury of the United States all sums for which he is liable." Since it is presumed that plaintiff is liable unless he is proved faultless, the withholding of plaintiff's pay is not improper.

It is alleged that the Navy still believed Antonio Serrano was guilty of grand larceny, and that his absence from the ship following the theft and his failure to report the theft immediately were considered by the Secretary in a light that improperly implied plaintiff's guilt. As a result, plaintiff alleges he was denied relief by the Secretary. It is contended by plaintiff that this court should take judicial notice of the acquittal and thus the only issue is whether Serrano by his own actions contributed to or was the proximate cause of the loss of public funds. We cannot agree. First, Serrano's actions might have been considered by the Secretary as evidence of Serrano's guilt. This court cannot say specifically whether the Secretary of the Navy based

6. *Boggs v. United States, supra* note 4, 44 Ct.Cl. at 384.

his decision on these facts, but, assuming *arguendo* that he did, it was still not improper to consider them. In *Allen,* the Supreme Court stated that: [7]

> * * * Indeed, the law is entirely well settled that the flight of the accused is competent evidence against him as having a tendency to establish his guilt. * *

■ As indicated in *Citizens To Preserve Overton Park, Inc.,* in reviewing an administrative decision by the secretary of an executive department of the Government, a de novo review is unwarranted.[8] The Court also stated that the Secretary's decision is entitled to a presumption of regularity. When determining whether a secretary's decision is arbitrary, capricious, or an abuse of discretion, the Supreme Court stated: [9]

> * * * To make this finding the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. [Citations omitted.] Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency.

■ Therefore, a consideration of whether plaintiff committed the actual theft is not improper. The law allows this, and we are not in a position to second-guess the Secretary.

Plaintiff's acquittal at the second court-martial in no way precludes the Secretary from again examining the attendant circumstances of the disappearance of the funds in determining to his own satisfaction whether plaintiff was at fault or negligent in the handling of the public money. Plaintiff contends that the Secretary acted improperly by apparently considering those things that might point to plaintiff's guilt. This is not true. The issue of plaintiff's "guilt" or "fault" is not excluded from inquiry.[10] The trials for criminal charges and for relief from liability are distinct. Different burdens of proof exist for the two trials, and different findings on the facts can be reached. A mere reversal of a conviction does not vitiate an administrative decision that has relied in part on records of criminal proceedings.[11]

Plaintiff argues that the decision of the Secretary is improper if he relied upon the criminal record, since the record of the second court-martial, resulting in plaintiff's acquittal, was only summarized. Therefore, plaintiff alleges the omission of pertinent information from the "summarized record" prevented the Secretary from considering all the relevant factors, and, without this information, the Secretary's decision could not be a complete consideration and thus was invalid. The "summarized record" cannot be said to have worked to the detriment of plaintiff. In any event, we cannot fault the Secretary for its unavailability. After plaintiff's acquittal, the full transcript was preserved for the required period of time, a summary was prepared, and then the full transcript was destroyed. This was in accordance with established military procedure.[12] Plaintiff at the time of the court-martial made no objection to this procedure or request that it be modified.

Plaintiff cites the *Seo* case for the proposition that the Secretary's decision without this lost information is improper, and thus

---

**7.** *Allen v. United States,* 164 U.S. 492, 499, 17 S.Ct. 154, 157, 41 L.Ed. 528 (1896).

**8.** *Citizens To Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 415–16, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). .

**9.** *Id.* at 416, 91 S.Ct. at 823.

**10.** *Jankowitz v. United States,* 209 Ct.Cl. 489, 496, 533 F.2d 538, 542 (1976); *Doggett v. Unit-* ed States, 207 Ct.Cl. 478, 483 (1975); *see also Alsbury v. United States Postal Service,* 530 F.2d 852, 855 (9th Cir.), *cert. denied,* 429 U.S. 828, 97 S.Ct. 85, 50 L.Ed.2d 91 (1976).

**11.** *Mack v. McCune,* 551 F.2d 251, 254 (10th Cir. 1977); *United States v. Chambers,* 429 F.2d 410, 411 (3d Cir. 1970); *see also Robinson v. Benson,* 570 F.2d 920, 923 (10th Cir. 1978).

**12.** Manual for Courts-Martial ¶¶ 82b, 83b.

arbitrary, capricious, and an abuse of discretion.[13]

In that case, the ninth circuit invoked the same standard applied in *Citizens To Preserve Overton Park, Inc., supra* note 8. In determining if there was a "clear error in judgment," the court determined that the *only* basis for the Secretary's determination that Moo Seon Seo should not be granted a working visa was an outdated list of alternative American workers, filed with the state agency.[14] The court stated that the Secretary's decision to decline Moo Seon Seo's request, without first investigating the true circumstances that surrounded his hiring, was an abuse of discretion. This has little to do with the case at hand. The Secretary of the Navy had more than sufficient information to make his determination. All officers presiding at the courts-martial recommended to the Secretary that plaintiff not be released from liability. The full transcript of the first trial and the summarized record of the second trial compile a mountain of information from which the Secretary could properly make his decision.

### V.

Regardless, the real question that has to be answered is whether Antonio Serrano was faultless and not negligent in his handling of the public's money. Plaintiff contends that since he was acquitted of grand larceny, this possible explanation for the loss of the money is precluded from consideration by the Secretary. It is suggested by plaintiff that there are three other possible explanations for the disappearance of the money; that all three are mere speculation and do not fix him with fault or negligence. If, as plaintiff suggests, a thief may have observed the combination while he opened the safe, he was negligent in not taking the necessary steps to prevent such a happening. Therefore, plaintiff cannot be said to be without fault under this first

possibility. The record indicates that opening the safe through two small holes in its back, a second possibility suggested by plaintiff, was virtually impossible and, as a consequence, plaintiff's second theory is discarded. It is plaintiff's position that he cannot be adjudged at fault unless it is proved that he left his safe open. Again we disagree. As admitted by plaintiff, if the safe had been left open, this would constitute negligence under plaintiff's third theory.

Plaintiff points to *Boggs, supra* note 4, for the proposition that a disbursing officer should be relieved from liability if the loss of public money was due to an honest mistake. *Boggs* does not stand for this proposition. On the contrary, that case stands for the proposition that, even though a disbursing officer may be legally liable, relief might be granted by this court if the officer who is responsible for the lost money can prove that he was faultless.[15] This court cannot agree that Serrano's acquittal in a criminal trial on the charge of grand larceny automatically places plaintiff in the class of exceptional cases, mentioned in *Boggs*, that are deserving of relief.

■ It is argued that the United States District Court for the Eastern District of Virginia interpreted 31 U.S.C. § 95a to mean that the fault or negligence involved must be the *proximate cause* of the loss. Thus the Secretary of the Navy could not deny relief unless the loss was proximately attributable to plaintiff. This argument has no merit. If such an argument were to be accepted by this court, it would shift the burden of proof in disbursement cases to the Government. This is *contra* to *Boggs*.

Shifting of the burden of proof, and forcing the Government to prove that plaintiff's conduct was a proximate cause of the loss, would be intolerable. This shift would negate the special responsibility that disburs-

**13.** *Seo v. United States Dep't of Labor,* 523 F.2d 10 (9th Cir. 1975).

**14.** *Id.* at 13.

**15.** *Boggs v. United States, supra* note 4, 44 Ct.Cl. at 384.

ing officers have in handling public funds.[16] It would also "open a door to frauds, which might be practised with impunity." [17]

## VI.

The facts of plaintiff's unauthorized leave immediately following his discovery of the loss and his failure immediately to report the theft are vital to the disposition of this case. Plaintiff contends that he went on unauthorized leave to raise money to replace that which was stolen. Assuming that we accept this explanation as fact, plaintiff's testimony concerning his reasons for taking such actions, though laudable, is insufficient to relieve him from liability.[18] The failure immediately to notify his superiors of the loss so that they could initiate a search was "fault" on plaintiff's part.

If Serrano had not taken unauthorized leave and had immediately reported the loss of the money, and if it were not recovered, the probabilities are that he would still have been adjudged liable. In *White*,[19] the plaintiff was relieved from liability due to an overwhelming amount of evidence that indicated a superhuman effort on his part. White not only took those precautions expected of him in protecting the money and property of the United States, but further precautions were taken exemplifying extraordinary diligence on his part. Further, White had little or no direct control over the funds, as Serrano did in the instant case. Serrano not only had an armed guard protecting the funds for which he was responsible, but he was the single individual who knew the combination of that particular safe.

Plaintiff has attempted to use *Libby*[20] as authority for his contention that the delay in reporting the loss does not constitute "fault" on his part. Libby was a pilot

flying missions between the United States and Europe. As the chief pilot on missions of this type, Libby was made a temporary Class B finance officer for the purposes of emergency disbursements needed to carry out these special assignments.

Since Libby was released from liability, even though he did not report the loss of the funds for 40 days, plaintiff here contends that he should not be liable for his delay in reporting the theft. Libby lost the money, it was determined, due to no fault of his own, and his failure to report the loss was due to mitigating circumstances. He was still on a mission when the funds were lost.

Libby was holding Government funds only in order to carry out the Government's orders. This was not the situation with Antonio Serrano.

 There is a presumption of regularity that is given administrative decisions made by a secretary of an executive department of the Government. Plaintiff has the burden of overcoming this presumption and his allegations that the Secretary did not specifically enumerate the grounds upon which he denied plaintiff relief or that destruction of the verbatim transcript of the second court-martial deprived the Secretary of information necessary to his decision are insufficient to show that the Secretary's decision was arbitrary, capricious, or an abuse of discretion. Courts have held that administrative decisions can be affirmed even though the agency has not explained in detail the reasons for its decision where there is a sufficiently detailed factual record supporting its action.[21] Furthermore, the Government does not have the burden of proving fault or negligence on the part of plaintiff; plaintiff has the sole burden of

16. *United States v. Prescott, supra* note 2; *Pattee v. United States*, 3 Ct.Cl. 397, 400 (1867); *O'Neal v. United States*, 60 Ct.Cl. 413, 414 (1925).

17. *United States v. Prescott, supra* note 2, 44 U.S. (3 How.) at 588.

18. *Pattee v. United States, supra* note 16.

19. *White v. United States*, 72 Ct.Cl. 375, 391–92 (1931).

20. *Libby v. United States*, 112 Ct.Cl. 532, 81 F.Supp. 722 (1949).

21. *Environmental Defense Fund, Inc. v. EPA*, 167 U.S.App.D.C. 71, 83, 510 F.2d 1292, 1304 (D.C.Cir.1975).

proving that he was without fault or negligence in order to qualify for the discretionary relief provided by the mitigating statute. Plaintiff has failed both in his burden to show irregularity in the Secretary's actions and that plaintiff was without fault or negligence in the disappearance of the Government's money.

Defendant's motion for summary judgment is granted; plaintiff's cross-motion for summary judgment is denied; and the petition is dismissed.