**RALCON, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 159–86C.**

United States Claims Court.

Sept. 29, 1987.

Frank M. Rapoport, Philadelphia, Pa., for plaintiff; Saul, Ewing, Remick & Saul, of counsel.

Stephen J. McHale, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant.

## OPINION

WIESE, Judge:

This action arises from the Government's termination of a contract for default and the accompanying demand for return of unliquidated progress payments from the contractor. The contractor, plaintiff here, brought suit in this court pursuant to the Contract Disputes Act of 1978, 41 U.S.C. §§ 601–613 (1982). The amended complaint,[1] asks the court, among other things, to: (i) declare the default termination invalid and convert it into a termination for convenience, (ii) award unspecified convenience termination damages, and (iii) declare plaintiff not liable to the Government for return of the progress payments. The Government has filed a counterclaim for the progress payments.

Defendant moves to dismiss the complaint on several grounds. First, the Government contends that plaintiff's claim for convenience termination damages was not submitted to the contracting officer for a final decision as required by 41 U.S.C. § 605(a); therefore, defendant argues, the claim for damages is not ripe for review. Next, the Government argues that if plaintiff's claim for damages is dismissed, the appeal of the default termination must also be dismissed because—divorced from a claim for monetary damages—it is a claim for pure declaratory relief and, as such, falls outside the jurisdiction of the court. Finally, although the argument is not made in so many words, the logic of defendant's position would also call into question the court's jurisdiction to consider plaintiff's appeal of the Government's demand for the return of progress payments inasmuch as the court is essentially being asked in that claim to render a declaration that plaintiff does not owe a sum of money to the United States.[2]

Having considered the parties' written submissions together with their oral presentations, the court now concludes as follows. First, plaintiff's appeal of the Government's demand for return of progress payments states a claim within the jurisdiction of the court. Second, resolution of the Government's demand necessarily calls into question the correctness of the default termination; hence, that claim too is properly before the court. Finally, as to the claim for convenience termination damages, the matter cannot be adjudicated here (even assuming plaintiff prevails on the default termination issue) until the contracting officer has been given opportunity to decide the question. The bases for these

---

1. Plaintiff's right to amend its complaint to add a request for declaratory relief, *i.e.*, that the court determine plaintiff not liable for the return of progress payments, was opposed by the Government on grounds of timeliness. The allowance of this motion is addressed in a separate order of this court published on August 14, 1987, 12 Cl.Ct. 773 (1987).

2. It should be noted that defendant's jurisdictional contentions were addressed to the complaint as originally filed, that is, prior to the amendment seeking relief from the Government's demand for the return of progress payments. Even though that demand obviously concerns money, its resolution would not lead to the entry of a money judgment; and thus would appear to reach beyond the traditional boundaries of our jurisdiction. Hence, the court believes that the amendment notwithstanding, the force of the Government's jurisdictional argument—that the court lacks declaratory judgment authority—remains a point warranting examination. It is on this basis, then, that this opinion proceeds.

conclusions are set forth in the text that follows.

## Facts

Plaintiff submitted the lowest bid on a contract (No. DAAA09–83–C–0192) to manufacture navigational equipment (azimuths indicators) for the U.S. Army Armament, Munitions and Chemical Command in Rock Island, Illinois. During the pre-award responsibility survey, the Government engineer in charge of quality assurance informed plaintiff that the specifications for the manufacture of the special fixtures, which were to be used to test the contract equipment, had been accidently omitted from the bid solicitation materials. Pursuant to the engineer's suggestion, plaintiff wrote a letter assuring the Government that Ralcon was aware of and intended to comply with the required quality standards. The contract was then awarded to plaintiff in January 1983.

Following the contract award, plaintiff asked the Government to clarify whether the test fixtures covered by the missing documents were required under the contract or whether plaintiff was free to use test equipment of its own choosing. Said plaintiff in its letter: "We presumed when we bid this contract, that we may use our own inspection means at our discretion in lieu of those for which drawings are not furnished by the Government." In response, the Government supplied plaintiff with the missing specifications for the test fixtures and asked plaintiff to submit a price-adjustment proposal reflecting the increased costs and additional performance time (if any) that would be associated with the manufacture and use of the specified test fixtures. In May 1983, plaintiff submitted its proposed price adjustment and new delivery schedule. When it received no answer after nine months, plaintiff submitted a second price-increase proposal and schedule revision. Both requests were submitted to the contracting officer and certified as contractor claims in excess of $50,000, pursuant to 41 U.S.C. § 605(a), (c).

Despite the fact that it had initially requested the price-adjustment submissions, the Government, now acting through a new contracting officer, denied both requests and directed Ralcon to submit a revised delivery schedule. Plaintiff took issue with the denials, but agreed to a new delivery schedule under which the first articles were to be delivered by November 1984. At the time it agreed to the new delivery date, plaintiff stated that it intended to submit a proposal to the Army Armament Research and Development Command in Dover, New Jersey asking for permission to substitute less expensive testing equipment for the special test fixtures in the specifications. Plaintiff eventually did receive approval for this substitution. However, two days before the approval arrived, the entire contract was terminated for default by the contracting officer in Illinois.

The default termination was memorialized in two letters dated March 11, 1985. The first letter formally denied plaintiff's two requests for price adjustments. The second letter terminated the contract for default and demanded the repayment of $74,087 in unliquidated progress payments. Both letters indicated that the actions constituted final decisions of the contracting officer within the meaning of 41 U.S.C. § 605(a). The letters advised plaintiff that it could appeal the decisions either to the Armed Services Board of Contract Appeals within 90 days, pursuant to § 606, or directly to the Claims Court within one year, pursuant to § 609(a)(1), (3). Plaintiff elected to bring suit here.

## Discussion

▮ In moving to dismiss the complaint, defendant initially argues that plaintiff's certified claims for cost adjustments were mooted by the subsequent default termination and thus are now subsumed in any claim plaintiff may have for convenience termination damages. *See Nolan Brothers, Inc. v. United States*, 186 Ct.Cl. 602, 609–10, 405 F.2d 1250, 1255 (1969). And the claim for convenience termination damages—the Government goes on to say—can not survive here either because that claim was not submitted to the contracting officer for a final decision as re-

quired by 41 U.S.C. § 605(a). *See, e.g., Thoen v. United States,* 765 F.2d 1110, 1116 (Fed.Cir.1985). Neither in its brief nor at oral argument did plaintiff challenge the correctness of the Government's position on these points. They are, indeed, beyond argument.[3]

As a result, the only claims which remain for consideration involve the appeal of the contracting officer's decision to terminate the contract for default and the appeal of the accompanying demand for the return of progress payments. However, neither of these claims involve demands presently redressable in monetary terms—and herein lies the threshold issue in the case. The Government contends that unless the controversy before the court seeks the vindication of a right enforceable through a money judgment, the court does not have jurisdiction.

As an historical proposition, the Government's contention is not debatable. The decision in *United States v. King,* 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969), made clear that the Court of Claims had no power to render a declaratory judgment where the plaintiff sought no "actual, presently due money damages from the United States." *Id.* at 3, 89 S.Ct. at 1502. It made no difference that the relief sought—a declaration concerning the nature of the plaintiff's retirement from the military—was indirectly money-related in that it affected the plaintiff's income-tax liability.

The rule in *King* applied equally to breach-of-contract claims brought directly in the Court of Claims and to suits challenging the decisions of agency boards of contract appeals (to which claims arising under Government contracts were referred under the standard "disputes" clause). Accordingly, the Court of Claims held that it had no authority to render judgment on an appeal of a board decision where the contractor did not seek monetary damages against the United States, but sought only to reverse a default termination and obtain a declaration that it did not owe the Government liquidated damages. *Computer Wholesale Corp. v. United States,* 214 Ct.Cl. 786, 788, 566 F.2d 1189 (1977). As in *King,* although adjudication of the issues before the court would ultimately determine the plaintiff's monetary obligations to the Government, this was not sufficient to state a claim for damages within Tucker Act jurisdiction.

█ But the question whether the same jurisdictional limitation remains in place today with respect to suits arising under the Contract Disputes Act is another matter. Although the Claims Court has not spoken with one voice on this question, a majority of the reported decisions concerned with the issue have concluded, albeit not expressly though certainly in result, that the court does not run afoul of the declaratory judgment prohibition in instances where, as here, the foundation of the contractor's suit is a *Government* claim seeking the (re)payment of money.[4] That is to say, even

---

**3.** A claim for convenience termination damages is subject to submission and certification requirements under the plain language of 41 U.S.C. § 605. Section 605(a) states in pertinent part: "All claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision." Section 605(c)(1) goes on to require that if the claim involves more than $50,000, the contractor must certify that the demand is made in good faith and support that assurance with data which accurately reflect the amount of money allegedly owed to the contractor. The language of the statute imposes these procedural requirements on all contractor claims for money, regardless of the grounds upon which they are based.

**4.** Examples include: *Haynes Construction Systems, Inc. v. United States,* 10 Cl.Ct. 526, 529

(1986) (stating that contract dispute not actionable in Claims Court until plaintiff submits a money claim to the contracting officer, which is denied, "or the government brings a money claim against plaintiff"); *Elgin Builders, Inc. v. United States,* 10 Cl.Ct. 40, 44 (1986) (finding jurisdiction to hear contractor defense against Government claim for liquidated damages); *Gunn-Williams v. United States,* 8 Cl.Ct. 531, 535 (1985) (finding jurisdiction to hear defense against Government monetary demand arising from default, including return of progress payments) and *D. Moody & Co. v. United States,* 5 Cl.Ct. 70, 79 (1984) (recognizing contractor's right to obtain review of default termination in suit appealing a contracting officer's decision assessing excess reprocurement costs).

though such suits may seek no more than a ruling disallowing a contracting officer's claim to money due, such an exercise of declaratory jurisdiction by the court has been deemed appropriate in light of the language of sections 605 and 609 of Title 41 (the Contract Disputes Act) and section 1491 of Title 28 (the court's basic jurisdictional statute) each of which place claims "by or against" a contractor within the province of the court's power.

The referenced sections read in pertinent part as follows. First, section 605(a):

All claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision. All claims by the government against a contractor relating to a contract shall be the subject of a decision by the contracting officer.

Next, section 609(a)(1):

[I]n lieu of appealing the decision of the contracting officer under section 605 of this title to an agency board, a contractor may bring an action directly on the claim in the United States Claims Court, notwithstanding any contract provision, regulation, or rule of law to the contrary.

And, finally, 28 U.S.C. § 1491(a)(2):

The Claims Court shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 10(a)(1) of the Contract Disputes Act of 1978 [41 U.S.C. § 609(a)(1) (1982)].

Taken together, this statutory scheme would appear to put beyond question the court's authority to hear and decide a contractor suit based entirely upon the contractor's opposition to a Government demand for money.

The Government's argument seems to be however, that we should not take this language at face value given the distinct concern of Congress, as seen in the legislative history of the referenced statutes, that the court not be vested with declaratory judgment authority. Bearing in mind that plain words may not always carry a plain meaning, we give the Government's argument a closer look.

The version of the Contract Disputes Act that was originally passed by the House would have given the Court of Claims jurisdiction to render a declaratory judgment "[i]n a case of actual controversy within its jurisdiction, with respect to claims against the United States founded upon express or implied contract * * * whether or not further relief is or could be sought." H.R. 11002, 95th Cong., 2d Sess., 124 Cong.Rec. 31,643 (1978). The language of the section would have permitted declaratory relief only in cases of a contractor claim against the Government otherwise within Tucker Act jurisdiction; it would not have extended jurisdiction to actions arising from claims of the Government against the contractor.

The same is true of the Senate Judiciary Committee's version of the bill, S. 3178, which was ultimately enacted into law as the Contract Disputes Act. That bill, as reported out of committee, included a provision—section 14(k)—which would have amended the Declaratory Judgments Act, 28 U.S.C. § 2201 (1982), to give the Court of Claims the power to grant declaratory relief in any case otherwise within its jurisdiction. The express purpose of the provision was to overturn the Supreme Court's decision in *King*. S.Rep. No. 1118, 95th Cong., 2d Sess. 34 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5235, 5268. Thus, the bill, in the form in which it reached the Senate floor, would have given the Court of Claims jurisdiction to render declaratory relief in any constitutional, statutory or contractual claim against the United States, but it still would not have extended jurisdiction to suits arising from claims by the Government against a private party.

All of that changed on the Senate floor, however, where the bill was significantly altered in a series of amendments proposed by the Majority Leader, Senator Robert Byrd. One of the revisions deleted § 14(k). As explained by Senator Byrd, the reason for the change was to prevent a contractor from splitting his cause of action against the Government by first bringing a suit for

declaratory relief and only later bringing an action for monetary damages:

> The elimination of this provision addresses concerns expressed by the Justice Department, the Department of Defense and the Armed Services Committee that allowed (sic) the Court of Claims declaratory judgment authority would undermine the disputes resolving process by permitting, in some cases, access to the Court before presentation of a claim to the contracting officer. The subject of equity relief was never addressed by the Procurement Commission [upon whose recommendations the Contract Disputes Act was largely based] and I do not believe that S. 3178 is the correct forum for making this change in the jurisdiction of the Court of Claims. [124 Cong.Rec. 36,267 (1978).]

Standing alone, this amendment would have done no more or less than return Tucker Act jurisdiction to the status quo under *King*.

The story does not end there, however. In the same set of floor amendments, Senator Byrd proposed the addition of the following language to the Tucker Act: "The Court of Claims shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under the Contract Disputes Act of 1978." 124 Cong.Rec. 36,266 (1978). The amendment was passed without further explanation in the Senate. Nor was there any further discussion of the matter when the House accepted the Senate's version of the bill. 124 Cong.Rec. 37,076 (1978).

Thus, the legislative history leaves us with a paradox: with one hand Congress expressly withheld from the Court of Claims the power to grant declaratory relief and yet with the other it expanded Tucker Act jurisdiction to include "claims * * * against * * * the contractor", a cause of action that could only be heard pursuant to the contractor's filing of a suit for a declaratory judgment to establish its legal rights and liabilities with respect to the Government. As to how these legislative actions could be considered logically consistent, Congress was simply silent.

The issue was revisited five years later in the Federal Courts Improvement Act of 1982, but with no more conclusive results. The version of the Act that eventually became law—S. 1700—was originally introduced in the Senate by the new Majority Leader, Senator Robert Dole. As proposed, § 133(a) of the bill would have amended the Tucker Act to contain the following language at what is now 28 U.S.C. § 1491(a)(2):

> To afford complete relief in controversies within its jurisdiction, the court may grant declaratory judgments and such equitable and extraordinary relief as it deems proper, including but not limited to injunctive relief * * *. The Claims Court shall have jurisdiction to render judgment upon any claim by a contractor arising under section 10(a)(1) of the Contract Disputes Act of 1978. [127 Cong. Rec. 23,089 (1981).]

In the Senate Judiciary Committee, the section was rewritten to eliminate any express reference to declaratory and injunctive relief. At the same time, however, § 1491(a)(2) was revised to bring within Claims Court jurisdiction "claims by or against, or disputes with, a contractor arising under section 10(a)(1) of the Contract Disputes Act of 1978." 127 Cong.Rec. 29,-849 (1981). The change was not explained in the pertinent portion of the Senate report, S.Rep. No. 275, 97th Cong., 1st Sess. 22 (1981), U.S.Code Cong. & Admin.News 1982, pp. 11, 32, or in the comments of Senator Dole on the floor, 127 Cong.Rec. 29,858 (1981). Both explanations appear to be based upon the language of the bill as originally proposed, not the version approved by the committee. Thus, in the Federal Courts Improvement Act, as in the case of the Contract Disputes Act, Congress carefully eliminated language that would have given the Claims Court the express authority to render declaratory judgments and then just as carefully added language to the Tucker Act that can only make sense as an implied grant of that very authority in the context of Government claims against contractors.

Despite these contradictory signals, this much can be inferred from the legislative history: Congress consistently felt that some change in Tucker Act jurisdiction was necessary to fulfill the objectives of the Contract Disputes Act. Otherwise, no change in the Tucker Act would have been needed in 1978 and there would have been no need to so carefully preserve the identical language in 1982. Congress' choice of the precise wording of § 1491(a)(2) was too deliberate to permit the conclusion that "jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 10(a)(1) of the Contract Disputes Act of 1978" was meant to exclude jurisdiction where the contractor brings suit to oppose a monetary claim asserted by the Government. As long as that language can fairly be read as creating an action for declaratory relief—at least in cases where the Government asserts a monetary demand against the contractor—then nothing in the legislative history compels a contrary interpretation.[5] "Absent a *clearly expressed* legislative intention to the contrary," the statutory language must be given literal effect. *Bread Political Action Committee v. FEC*, 455 U.S. 577, 580, 102 S.Ct. 1235, 1237, 71 L.Ed.2d 432 (1982); *Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980) (emphasis added).

Still, the Government contends, the language of § 1491(a)(2) cannot be read to confer jurisdiction to render declaratory relief because the statute lacks that precise terminology. By contrast, defendant notes, when Congress wished to give the court declaratory judgment power in the context of pre-award contract claims, it did so explicitly. *See* 28 U.S.C. 1491(a)(3) (1982). Therefore, the Government argues, it must be assumed that the absence of any reference to declaratory relief in § 1491(a)(2) was deliberate and indicates that Congress did not intend to give the Claims Court similar powers over post-award claims arising under the Contract Disputes Act.

Whatever force this argument may have in the abstract, it is inconsistent with the Supreme Court's interpretation of the language in another, albeit less well known, statute governing Claims Court jurisdiction, 28 U.S.C. § 1496 (1982). That provision, which also was revised and reenacted in the Federal Courts Improvement Act, states as follows:

> The United States Claims Court shall have jurisdiction to render judgment upon any claim by a disbursing officer of the United States or by his administrator or executor for relief from responsibility for loss, in line of duty, of Government funds, vouchers, records or other papers in his charge.

Although the statute contains no explicit reference to the disbursing officer's right to seek declaratory relief, the Supreme Court has concluded that by this "very curious provision, the [Claims Court] is authorized to establish for him a defense to a claim, which claim the government can only establish judicially in some other court." *United States v. Clark*, 96 U.S. (6 Otto) 37, 43, 24 L.Ed. 696 (1877). The right to seek this declaration of rights arises when, among other things, the Government asserts a demand for the payment of money from a disbursing officer. *United States v. Smith*, 105 U.S. (15 Otto) 620, 621, 26 L.Ed. 1191 (1881); *see also Serrano v. United States*, 222 Ct.Cl. 52, 58, 612 F.2d 525, 528–29 (1979); *Sese v. United States*, 125 Ct.Cl. 526, 530, 113 F.Supp. 658, 661 (1953); *Boggs v. United States*, 44 Ct.Cl. 367, 381–84 (1909); *Scott v. United States*, 18 Ct.Cl. 1, 7 (1882).

---

5. Arguably, the phrase "any claim by or against, or dispute with, a contractor" could also be read as granting jurisdiction over suits lacking any present monetary component, as for example, a contractor's challenge to the lawfulness of a default termination. Unless it is to be regarded as a mere surplusage, § 1491(a)(1) appears to identify the clause "dispute with" a contractor as a cause of action distinct from a monetary claim "by or against" a contractor. We need not undertake to resolve this issue, however, since it is not essential to the problem posed here.

■ If the language of § 1496 is sufficient to confer jurisdiction on the Claims Court to entertain a claim in favor of a plaintiff who seeks no more than a declaration that he is not liable for a Government monetary claim, so too is the language in § 1491(a)(2). It is impossible to see why the absence of express reference to declaratory relief would be fatal to jurisdiction in one context and not the other. We therefore conclude that the language in § 1491(a)(2) is sufficiently express to waive the sovereign immunity of the United States to suits for declaratory relief by a contractor appealing a contracting officer's demand for the return of progress payments.

Finally, defendant argues that even if plaintiff's claim is within the court's jurisdiction, the correctness of the Government's demand for the return of unliquidated progress payments is legally independent of the propriety of the default termination itself. As long as the contracting officer purported to terminate the contract pursuant to the standard "default clause", defendant argues, the Government is entitled to the return of unliquidated progress payments, regardless of the lawfulness of the default decision. The only factual issue, says the Government, is whether the progress payments were liquidated or unliquidated at the time of the termination.

Defendant misreads the contract. The clause upon which the Government relies, titled "Special Provisions Regarding Default", states as follows: "If this contract is terminated pursuant to the clause entitled 'Default,' (i) the Contractor shall, upon demand, pay to the Government the amount of unliquidated progress payments". 32 C.F.R. 7–104.35(h) (1983). The default clause, in turn, provides in pertinent part:

> If, after notice of termination of this contract under the provisions of this clause, it is determined for any reason that the Contractor was not in default under the provisions of this clause, or that the default was excusable under the provisions of this clause, the rights and obligations of the parties shall, if the

contract contains a clause providing for termination for convenience of the Government, be the same as if the notice of termination *had been issued* pursuant to such clause.
> [32 C.F.R. § 7–103.11(e) (1983) (emphasis added).]

Thus, if a default termination proves to be invalid, it is no longer a termination executed pursuant to the default clause; it retroactively becomes a termination executed pursuant to the termination-for-convenience clause. *Nolan Brothers, Inc. v. United States*, 186 Ct.Cl. 602, 608–10, 405 F.2d 1250, 1254–55 (1969); *Davis v. United States*, 180 Ct.Cl. 20, 34 & n. 5 (1967).

■ In a termination for convenience, the Government takes title to the goods completed to-date and is liable to the contractor for the cost of the goods, plus the profit earned to the date of termination. 48 C.F.R. § 52.249–2 (1986). The contractor's liability for the return of progress payments is offset by this amount. Therefore, the Government's right to the return of unliquidated progress payments clearly depends upon the validity of the default termination. *Nuclear Research Corp. v. United States*, 814 F.2d 647, 649 (Fed.Cir. 1987).

## CONCLUSION

For the reasons stated, defendant's motion to dismiss is granted with respect to plaintiff's claims for monetary damages and denied with respect to plaintiff's claim for a declaration that it is not liable to the Government for the return of progress payments. And the latter, as we have said, necessitates a review by the court of the correctness of the contracting officer's decision to terminate the contract for default.