**A.E. FINLEY & ASSOCIATES, INC.,**
**Plaintiff–Appellant,**

v.

**UNITED STATES of America,**
**Defendant–Appellee.**

No. 89–5632.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 6, 1990.

Decided March 23, 1990.

---

G. Wendell Thomas, Jr. (argued) and James N. Gore, Jr., Kennerly, Montgomery & Finley, Knoxville, Tenn., for plaintiff-appellant.

John W. Gill, Jr., U.S. Atty. and Mike Mitchell, Asst. U.S. Atty. (argued), Office of the U.S. Atty., Knoxville, Tenn., for defendant-appellee.

Before NELSON, Circuit Judge, and LIVELY, Senior Circuit Judge, and BERTELSMAN, District Judge.*

PER CURIAM.

The plaintiff sought a declaratory judgment that the United States had activated the contract dispute resolution mechanism of the Contract Disputes Act, 41 U.S.C. §§ 601 *et seq.*, and had exhausted its administrative and judicial remedies regarding the dispute. The district court denied relief. The United States, while defending the court's decision on the merits, argues as it did below that the district court lacked subject-matter jurisdiction. We conclude that the district court had jurisdiction, and we shall affirm the court's judgment on the merits.

I

Rust Engineering Company, acting for the United States Department of Energy, contracted to buy a crane from the plaintiff, A.E. Finley & Associates. When the crane was delivered, Rust refused to accept it on the ground that it did not conform to specifications. Instead, Rust exercised its contractual option to purchase a crane from another source and charge Finley for reprocurement costs. Rust so advised Finley in a letter dated June 27, 1985. The letter reminded Finley that under the Contract Disputes Act it could appeal Rust's decision to the contracting officer, a designated Department of Energy official.

* The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

In a letter to Finley dated September 11, 1985, which showed a copy going to the person identified in the earlier letter as the contracting officer, Rust requested payment of $50,844.44. The letter warned that if Rust were not paid within thirty days, it would turn the "claim" over to the Department of Energy for collection.

Three years later, the debt still unpaid, Finley brought a declaratory judgment action against the United States in district court. Finley sought a declaration that it could not be subjected to liability under the contract because the United States had exhausted its administrative and judicial remedies under the Contract Disputes Act of 1978, 41 U.S.C. §§ 601 *et seq.* Finley alleged that the government had in fact submitted a claim to the contracting officer, that because of delay by the contracting officer the claim must be deemed to have been denied, and that the United States could not appeal the decision of its own contracting officer.

The United States moved to dismiss the complaint for lack of subject-matter jurisdiction. The district court denied the motion, but entered judgment for the United States on the merits. This appeal followed.

## II

Before reaching the merits, we must determine whether the district court had subject-matter jurisdiction. Finley relies on federal question jurisdiction under 28 U.S.C. § 1331.

■ This case does arise under federal law, the Contract Disputes Act. Further, although § 1331 does not itself provide consent to be sued, *Kester v. Campbell,* 652 F.2d 13, 15 (9th Cir.1981), *cert. denied,* 454 U.S. 1146, 102 S.Ct. 1008, 71 L.Ed.2d 298 (1982), the Administrative Procedure Act, specifically 5 U.S.C. § 702, waives sovereign immunity under § 1331. *Warin v. Director, Dept. of Treasury,* 672 F.2d 590, 592 (6th Cir.1982). But if an action rests within the exclusive jurisdiction of the Claims Court under the Tucker Act, 28 U.S.C. §§ 1346 and 1491, the district court does not have jurisdiction regardless of other possible statutory bases. *Amoco*

*Production Co. v. Hodel,* 815 F.2d 352, 359 (5th Cir.1987), *cert. denied,* 487 U.S. 1234, 108 S.Ct. 2898, 101 L.Ed.2d 932 (1988). We must therefore consider the effect of the jurisdictional provisions of the Tucker Act.

■ The Tucker Act governs non-tort claims against the United States founded on the Constitution, federal statutes, executive regulations, or contracts with the United States. The Claims Court has jurisdiction over all such cases. 28 U.S.C. § 1491. Under 28 U.S.C. § 1346(a)(2), the district court has concurrent jurisdiction over claims for $10,000 or less, *unless* the claim is "founded upon [a] contract" with the United States in a case subject to sections 8(g)(1) and 10(a)(1) of the Contract Disputes Act of 1978, 41 U.S.C. §§ 607(g)(1) and 609(a)(1). With exceptions not relevant here, this leaves the Claims Court with exclusive jurisdiction over all Tucker Act claims for more than $10,000, see *United States v. Hohri,* 482 U.S. 64, 66 n. 1, 107 S.Ct. 2246, 2249 n. 1, 96 L.Ed.2d 51 (1987), and over Tucker Act claims founded upon a contract with the United States, regardless of the amount of the claim. *Chemung County v. Dole,* 781 F.2d 963, 967 (2d Cir.1986).

■ The Tucker Act generally applies only to actions against the United States for monetary damages, *United States v. Mitchell,* 463 U.S. 206, 216, 103 S.Ct. 2961, 2967, 77 L.Ed.2d 580 (1983), but one cannot circumvent exclusive jurisdiction in the Claims Court by suing simply for declaratory or injunctive relief in a case where such relief would be the equivalent of a judgment for money damages. *Tennessee ex rel. Leech v. Dole,* 749 F.2d 331, 336 (6th Cir.1984), *cert. denied,* 472 U.S. 1018, 105 S.Ct. 3480, 87 L.Ed.2d 615 (1985). The Claims Court has held that 28 U.S.C. § 1491(a)(2) gives the Claims Court jurisdiction of a claim seeking only a declaration that the plaintiff is not liable to the government on a contract. *Ralcon, Inc. v. United States,* 13 Cl.Ct. 294, 301 (1987). But the applicable portion of § 1491(a)(2) is limited to disputes arising under section 10(a)(1) of the Contract Disputes Act, 41

U.S.C. § 609(a)(1). Actions brought under that section, in turn, require as a predicate the decision of a contracting officer. 41 U.S.C. § 609(a)(3). Because there was no such decision here, it is questionable whether the Tucker Act could be found to grant jurisdiction to either the Claims Court or the district court.

■ Assuming *arguendo* that this action could be brought under the Tucker Act, the question of whether exercise of federal question jurisdiction is precluded turns on whether, under the statute, the jurisdiction rests exclusively in the Claims Court. Because Finley seeks no money or the "equivalent" from the United States, jurisdiction lies exclusively with the Claims Court only if Finley's claim is "founded upon" the contract between Rust and Finley. This court has warned against giving "an overly expansive scope" to the notion of claims "founded upon" a contract. *Leech*, 749 F.2d at 335.

The relief Finley seeks may be available in the Claims Court. See *Ralcon, Inc. v. United States*, 13 Cl.Ct. 294, 301 (1987). If so, however, it seems to us that the source of Finley's rights in that court, like the source of its rights in the district court, would be statutory, not contractual. Two cases illustrate the distinction.

The Ninth Circuit held that a claim that a contract was void was "founded on the contract" where the plaintiff relied on contract arguments: impracticability, frustration, and impossibility. *North Side Lumber Co. v. Block*, 753 F.2d 1482, 1486 (9th Cir.), *cert. denied*, 474 U.S. 919 and 931, 106 S.Ct. 248 and 265, 88 L.Ed.2d 256 and 271 (1985). And the court held that claims that enforcement of the contract would violate a federal statute were not founded upon the contract. *Id.* at 1486. The Second Circuit, noting that "it would be improper to classify all claims raising contract issues as contract actions," held that an unsuccessful bidder's attack on a contract awarded to a competing bidder was not founded upon the contract. *B.K. Instrument Co. v. United States*, 715 F.2d

713, 728 (2d Cir.1983). Finley's claim is more analogous to the latter claims, because Finley argues that the dispute resolution procedures of the statute bar the United States' claim.

In sum, we conclude that Finley's claim is neither a claim against the United States for more than $10,000 nor one "founded upon [a] contract" with the United States. It is therefore not within the exclusive jurisdiction of the Claims Court, and because it is not the district court had original jurisdiction under 28 U.S.C. § 1331.[1]

### III

The Contract Disputes Act provides both administrative and judicial remedies for resolving contract disputes. The first step in the process is for either the government or the contractor (Finley, in this case) to make a "claim." The claim goes to the designated contracting officer for a decision. This decision may be appealed to the Board of Contract Appeals or directly to the Claims Court. 41 U.S.C. §§ 606, 609(a)(1). The contracting officer must make a decision within a reasonable time. 41 U.S.C. § 605(c)(3). If he fails to do so, the contractor has the option of treating the delay as a decision denying the claim, thereby entitling the contractor to appeal to the board or the Claims Court. 41 U.S.C. § 605(c)(5); *Pathman Construction Co. v. United States*, 817 F.2d 1573, 1577 (Fed. Cir.1987) (construing this section as permissive rather than mandatory).

■ Finley argues that the letters from Rust to Finley in 1985 stated a "claim" which, because it was not acted upon, is deemed denied, thereby precluding further review. The Contract Disputes Act does not define "claim." See 41 U.S.C. § 601. Rather, the term is defined by the contract itself. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1395 (Fed.Cir. 1987).

Clause 16(c) of the contract between Rust and Finley defined "claim" as follows:

---

1. Because original jurisdiction was based on § 1331 rather than § 1346(a)(2), 28 U.S.C. § 1295(a)(2) does not deprive this court of appellate jurisdiction.

"(1) As used herein, 'claim' means a written demand or assertion by one of the parties seeking, as a legal right, the payment of money, adjustment or interpretation of contract terms, or other relief, arising under or relating to this contract.

(2) A voucher, invoice, or request for payment that is not in dispute when submitted is not a claim for the purposes of the Act. However, where such submission is subsequently not acted upon in a reasonable time, or disputed either as to liability or amount, it may be converted to a claim pursuant to the Act."

There is no showing that either letter was more than a request for payment not in dispute. The letter from Rust to Finley dated June 27, 1985, advised Finley that Rust would procure a crane from another source and bill Finley for the excess costs of reprocurement. On September 11, 1985, Rust informed Finley that these costs came to $50,844.44. The letter further indicated that if Finley failed to pay within thirty days, "this claim" would be turned over to the Department of Energy for collection. Though the letter referred to the "claim," it could not abrogate the contractual definition of that term.

Finley relies on the provision that says such a request could be converted into a claim if not acted on in a reasonable time or if disputed as to either liability or amount. However, there is no evidence that Finley disputed either liability or amount before bringing suit. That a dispute "was reasonably likely to exist," as Finley argues, is not sufficient under the contract.

■ Finley argues alternatively that the request for payment was automatically converted into a claim thirty days after the government received the September 11th letter. Again, this does not comport with the language of the contract, which makes the conversion permissive, rather than mandatory or automatic. Because it is the United States, acting through Rust, which made the request that was not paid, logically the United States, rather than Finley,

would have the option to convert the request to a claim. The United States did not exercise the option, and Finley was not entitled to relief.

The judgment of the district court is AFFIRMED.