BOYCE F. MARTIN, Jr., Circuit Judge,
dissenting.
The sole issue presented in this case is whether the district court properly dismissed the truckers’ claims for lack of subject matter jurisdiction under the Contract Disputes Act, 41 U.S.C. §§ 601-613. I am convinced that the district court erred, as has the majority, by misconstruing this Circuit’s precedent. I therefore respectfully dissent.
I.
Given the review of the facts contained in the majority opinion, I see no need to restate them here. I do, however, take this opportunity to articulate briefly why I am compelled to dissent from the en banc court’s disposition of this case. I begin by discussing the existing legal framework in this context, and then consider how the claims presented by the truckers should be decided consistent with the principles well-established within that framework.
A.
The United States Postal Service is an agency of the United States and thus enjoys sovereign immunity, except to the extent that it is waived. In 1970, Congress generally waived the postal service’s immunity by enacting the Postal Reorganization Act, which allows the postal service “to sue and be sued in its official name.” 39 U.S.C. § 401(1). The Act expressly gives the United. States district courts “original but not exclusive jurisdiction over all actions brought by or against the Postal Service.” 39 U.S.C. § 409(a); see also 28 U.S.C. § 1339 (providing an additional basis for federal district court jurisdiction over “any civil action arising under any Act of Congress relating to the postal service”).
In 1978, Congress enacted the Contract Disputes Act, 41 U.S.C. §§ 601-613, which divests federal district courts of subject matter jurisdiction over some contractual disputes involving the federal government. See, e.g., Campanella v. Commerce Exch. Bank, 137 F.3d 885, 891 (6th Cir.1998) (holding that the Contract Disputes Act divests the district court of subject matter jurisdiction presumably granted by a “sue- and-be-sued” clause applicable to the Small Business Administration). The Contract Disputes Act provides that “[a]ll claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision.” 41 U.S.C. § 605(a) (emphasis added). The decision rendered by the contracting officer is then reviewable only by an agency board of contracting appeals, 41 U.S.C. § 606, or by the Court of Federal Claims, 41 U.S.C. § 609(a)(1).
Consequently, if claims against the postal service “relat[e] to a contract” under the Contract Disputes Act, then sovereign immunity has not been waived and the federal district court lacks subject matter jurisdiction to hear the claims. In such a case, the claims could only be brought before the Court of Federal Claims. If, however, the claims do not “relat[e] to a contract,” sovereign immunity has been waived and the district court would presumably have jurisdiction.
*774 Fortunately, this Court, along with our sister circuits, has given meaning to the vague “relat[e] to a contract” language contained in the Contract Disputes Act. In RMI Titanium Co. v. Westinghouse Electric Corp., 78 F.3d 1125, 1136 (6th Cir.1996), a panel of this Court, relying on the District of Columbia Circuit’s decision in Megapulse, Inc. v. Lewis, 672 F.2d 959, 967 (D.C.Cir.1982), established the test for whether claims “relat[e] to a contract” under the Contract Disputes Act in this Circuit. There, we held that “for the [Contract Disputes Act] to apply, it must first be determined that the claims asserted are ‘essentially contractual’ in nature.” RMI Titanium Co., 78 F.3d at 1136 (quoting Megapulse, Inc., 672 F.2d at 967) (emphasis added). In so holding, we adopted the following standard first articulated by the District of Columbia Circuit in Megapulse: “The classification of a particular action as one which is or is not ‘at its essence’ a contract action depends both [1] on the source of the rights upon which the plaintiff bases its claim, and [2] upon the type of relief sought (or appropriate).” Id. (quoting Megapulse, Inc., 672 F.2d at 967). A number of our sister circuits have also adopted this so-called “rights and remedies” test announced in Megapulse. See, e.g., Up State Fed. Credit Union v. Walker, 198 F.3d 372, 375-76 (2d Cir.1999); United States v. J & E Salvage Co., 55 F.3d 985, 988-89 (4th Cir.1995); N. Star Alaska v. United States, 14 F.3d 36, 37-38 (9th Cir.1994).
The majority purports to follow Mega-pulse ’s “rights and remedies” test in holding that the federal district court does not have jurisdiction over any of the truckers’ claims. In my view, this application of the “rights and remedies” test not only denies federal government contractors their right to bring non-contractual claims in federal district court, but it also misconstrues and contradicts existing case law in this and other circuits, thus creating an unnecessary split in the circuits.
B.
In order to determine whether a claim is “essentially contractual,” we are first required to consider “the rights upon which the plaintiff bases its claim,” and, second, “the type of relief sought (or appropriate).” RMI Titanium Co., 78 F.3d at 1136 (quoting Megapulse, Inc., 672 F.2d at 967). A brief look at each allegation proves instructive in illustrating why all but one of the truckers’ claims are essentially non-contractual.
The first prong of the “rights and remedies” test requires this Court to consider the nature of the rights upon which the plaintiffs base their claim. This inquiry does not focus on whether a contractual relationship exists between the parties, or whether the claims, as a whole, in some way involve contractual issues. See, e.g., A.E. Finley & Assocs., Inc. v. United States, 898 F.2d 1165, 1168 (6th Cir.1990) (noting that “it would be improper to classify all claims raising contract issues as contract actions”) (quoting B.K. Instrument, Inc. v. United States, 715 F.2d 713, 728 (2d Cir.1983)). Instead, the relevant question is whether, despite the presence of an underlying contract between the parties, the rights asserted that form the basis of the claims are founded on the contract or on another ground, such as the Constitution or a federal statute.
Moreover, despite the majority’s unsupported claims to the contrary, the relevant inquiry under this test does not consider the defendant’s grounds for opposing the plaintiffs claim in determining whether the claim is “essentially contractual.” In fact, the language of the “rights and remedies” test makes clear that the inquiry is focused on the “rights upon which the plaintiff bases its claim.” Id. (emphasis *775 added). The majority points to no legal support for its proposition that a defendant’s rebuttal grounds are relevant to this inquiry, instead quoting language stating that a “plaintiffs title or characterization of its claims is not controlling,” and that “[a] plaintiff may not avoid the jurisdictional bar of the [Contract Disputes Act] merely by alleging violations of regulatory or statutory provisions.” B & B Trucking, Inc. v. United States Postal Serv., 363 F.3d 404, 425 (6th Cir.2004) (en banc opinion) (quoting RMI Titanium Co., 78 F.3d at 1136) (internal quotation marks omitted). As the Megapulse court stated in establishing the applicable “rights . and remedies” test:
Contract issues may arise in various types of cases where the action itself is not founded on a contract. A license, for example, may be raised as a defense in an action for trespass, or a purchase contract may be raised to counter an action for conversion. But the mere fact that a court may have to rule on a contract issue does not, by triggering some mystical metamorphosis, automatically transform an action based on trespass or conversion into one on the contract and deprive the court of jurisdiction it might otherwise have.
672 F.2d at 968; see also Commercial Drapery Contractors, Inc. v. United States, 133 F.3d 1, 4 (D.C.Cir.1998) (applying Megapulse’s “rights and remedies” test in concluding that the mere existence of contractual rebuttal points does not render a claim essentially contractual under the Contract Disputes Act). Thus, existing case law establishes that a claim does not become “essentially contractual” merely because the defendant raises the existence of a contract as a defense. .
The second prong of the “rights and remedies” test requires this Court to consider the type of relief that the plaintiff is seeking, or the type of relief that is appropriate given the plaintiffs claim. The Court of Federal Claims. generally does not have the equitable powers to grant prospective relief, and, thus, any claim for which such relief is suitable is more appropriately brought before the federal district court. See id. (concluding that plaintiffs’ cause of action against the General Services Administration seeking only equitable relief, rather than damages for breach of contract, was not at its essence a contract action).
II.
Applying these standards of existing precedent to the instant case, it becomes clear that the majority’s reasoning in depriving the truckers access to the federal district court is misguided. I briefly address each of the truckers’ causes of action in turn.
A.
The'truckers’ first cause of action consists of a number of Fifth Amendment claims alleging deprivation of liberty and property interests without due process of law. In short, the truckers assert three types of Fifth Amendment claims. First, they claim a violation of their property right to control use of their fuel tanks. Second, they assert a claim based on their alleged freedom to contract with fuel suppliers of their own choosing. Finally, the truckers allege a variety of liberty interests to control the operation of their businesses.
These Fifth Amendment claims are essentially non-contractual. The alleged right to protect property from being entered and used, which is asserted by the truckers here, is clearly not based on any contract. Rather, the source of the rights upon which the plaintiffs base their claim is the Fifth Amendment and, more specifically, the-truckers’ title to their property. Similarly, the truckers’ claims regarding their freedom to contract with fuel suppliers of their own choosing are not based on *776 any contractual provision, but are also based on their protected constitutional rights.
The majority concludes that “whether the truckers have a right to control their fuel supply depends upon whether their [transportation] contracts with [the postal service] afford such a right” in light of Amendment 3, which appears to require the truckers to comply with the fuel plan agreed to between the postal service and the fuel suppliers. B & B Trucking, Inc., 363 F.3d at 425 (en banc opinion) (emphasis in oi'iginal). In so holding, however, the majority mistakenly assumes that the source of the rights upon which the truckers base their claims is the transportation contract that each trucker has with the postal service to transport mail. As noted above, the truckers’ complaint clarifies that the source of the rights upon which they base their claims is not any contract between the truckers and the postal service, but rather their property rights protected independently of their transportation contracts. In similar cases, courts have refused to conclude, as the majority seems to do here, that non-contractual claims somehow automatically become “essentially contractual” for jurisdictional purposes under the Contract Disputes Act if the parties are in a contractual relationship or if some contractual issue would likely arise in rebuttal. See, e.g., Commercial Drapery Contractors, Inc., 133 F.3d at 4 (holding that a business’s claims that the federal government’s General Service Administration violated the Constitution, government procurement statutes, and federal regulations were not “essentially contractual” merely because the parties had entered into a contract and its termination provision was relevant to the Administration’s defense); Megapulse, 672 F.2d at 969 (concluding that a government contractor’s suit against the Coast Guard to prevent release of proprietary data was not “essentially contractual” despite the existence of relevant contractual issues) (“[The contractor’s position] is ultimately based, not on breach of contract, but on an alleged governmental infringement of property rights and violation of the Trade Secrets Act. It is actually the Government, and not [the contractor], which is relying on the contract .... ”).
The only claim asserted here by the truckers that is based on contractual rights is the claim that the postal service interfered with the performance of the truckers’ transportation contracts. The contracts on which this claim is based are, in fact, the original transportation contracts between the truckers and the postal service. The truckers seek enforcement of the pre-Amendment 3 version of those contracts. Consequently, because the rights asserted in this claim are based on contract, then jurisdiction of this claim is properly limited to the Court of Federal Claims. This is in stark contrast to the other Fifth Amendment claims, each of which is, for the reasons stated above, properly considered non-contractual given the source of the rights upon which the truckers base those claims.
B.
The truckers’ second cause of action claims that the postal service has violated its own regulations, which allegedly prohibit the postal service from telling a contractor how or when to purchase supplies and allow contractors to purchase fuel from any source at the contractor’s discretion. Despite the existence of transportation contracts between the postal service and the truckers, these allegations are simply not based upon contractual rights; rather, they are based upon rights established in federal government regulations. As such, they are not “essentially contractual” under the Megapulse standard discussed above and the district court has subject matter jurisdiction to hear these claims.
*777 c.
The truckers’ final cause of action is based on their claim of “arbitrary and capricious” agency action. In short, the truckers allege that the postal service obligated the truckers to the fuel supply contracts between the postal service and the fuel suppliers. The truckers claim that the fuel supply contracts created third-party obligations, which they argue the postal service does not have statutory authority to create, and are therefore “arbitrary and capricious” and violate due process.
In my view, there is simply nothing about this claim that relates to the contractual relationship between the truckers and the postal service. Granted, the truckers’ transportation contracts with the postal service may be relevant on the merits, particularly in the postal service’s rebuttal of the alleged “arbitrary and capricious” action. However, as noted above, the mere existence of contractual issues, specifically those not related to the rights upon which the plaintiffs base their claim, does not insulate the postal service from suit in federal district court. Thus, because the claims presented here in the truckers’ final cause of action are based upon rights not guaranteed by their transportation contracts with the postal service, but, rather, upon federal guarantees of due process, the district court properly had subject matter jurisdiction to hear those claims.
III.
While a review of the rights upon which the truckers base their claims strongly suggests that all but one of their claims are non-contractual, we are still required to address the second prong of Megapulse ’s “rights and remedies” test, which involves a consideration of the type of relief sought or appropriate. See RMI Titanium Co., 78 F.3d at 1136 (quoting Megapulse, Inc., 672 F.2d at 967). In the present case, the truckers are seeking declaratory and injunctive relief, both of which are forms of non-contractual prospective relief. Moreover, it appears that this prospective relief is the appropriate form of relief given the fact that the truckers are neither claiming breach óf contract nor seeking monetary damages against the postal service. See, e.g., Commercial Drapery Contractors, Inc., 133 F.3d at 4 (holding that plaintiffs’ cause of action seeking only equitable relief rather than damages for breach of contract was not at its essence a contract action).
Furthermore, despite the majority’s conclusions to the contrary, the truckers’ claims are not accurately characterized as seeking specific performance of any contract. First, the truckers are not trying to seek performance of their transportation contracts with the postal service. In fact, the federal government is the party that is relying on the transportation contracts, particularly Amendment 3, to defend against the truckers’ claims. Consequently, the truckers’ claims simply cannot be framed as seeking specific performance of their transportation contracts. Second, the majority errs in concluding that “[t]he truckers, in effect, seek specific performance of the contracts as they stood before any amendment.” B & B Trucking, Inc., 363 F.3d at 426 (en banc opinion). Importantly, the pre-amended contracts contained no language guaranteeing truckers’ rights to choose their own fuel suppliers. It is therefore inaccurate to view the plaintiffs’ claims as merely seeking specific performance of their pre-amended contracts when, in fact, the appropriate relief for their claims goes beyond the rights provided in the pre-amended contracts. Thus, the non-contractual relief appropriate for plaintiffs’ claims further supports the conclusion that the federal district court has subject matter jurisdiction over these claims.
*778 IV.
In sum, I dissent from the Court’s decision in this case. In my view, the majority incorrectly concludes that all of the truckers’ claims are essentially contractual and thus cannot be brought in federal district court. Under the “rights and remedies” test previously adopted by this Court, the plaintiffs’ claims all seek non-contractual remedies, and all but one — -the alleged liberty right to perform the transportation contracts — -are based on non-contractual rights. Consequently, the federal district court is not absolved of jurisdiction over these claims. I therefore respectfully dissent from the majority’s decision, which wrongfully denies the truckers, as well as all others similarly situated who contract with the federal government either directly or directly, access to bring non-contractual claims before the federal district court.