*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0352p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT
_____

MARIA MUNIZ-MUNIZ, et al.

*Plaintiffs*,

No. 12-4419

ROCIO ANANI SAUCEDO-CARRILLO; ROSA
CARRILLO-VASQUES; ALFONSO PALAFOX;
JOSE SAMUEL CONTRERAS GARCIA; JESUS
RODRIGUEZ-PEREZ, individually and on
behalf of a class of others similarly situated;
OHIO IMMIGRANT WORKER PROJECT; FARM
LABOR ORGANIZING COMMITTEE, AFL-CIO,

*Plaintiffs-Appellants*,

*v.*

UNITED STATES BORDER PATROL, et al.,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 3:09-cv-02865—Jack Zouhary, District Judge.

Argued: August 1, 2013

Decided and Filed: December 20, 2013

Before: GIBBONS and WHITE, Circuit Judges; GREER, District Judge.[*]

_____

## COUNSEL

**ARGUED:** John T. Murray, MURRAY & MURRAY CO., L.P.A., Sandusky, Ohio, for
Appellants. William C. Silvis, UNITED STATES DEPARTMENT OF JUSTICE,
Washington, D.C., for Appellees. **ON BRIEF:** John T. Murray, Leslie O. Murray,
Michael Stewart, MURRAY & MURRAY CO., L.P.A., Sandusky, Ohio, Mark Heller,
Eugenio Mollo, Jr., Aneel L. Chablani, ADVOCATES FOR BASIC LEGAL
EQUALITY, INC., Toledo, Ohio, for Appellants. William C. Silvis, UNITED STATES
DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees.

---

[*]The Honorable J. Ronnie Greer, United States District Judge for the Eastern District of
Tennessee, sitting by designation.

---

**OPINION**

---

GREER, District Judge.   The plaintiffs-appellants, five individuals and two organizations, appeal the district court's grant of a motion to dismiss their claims for prospective, injunctive relief for lack of subject matter jurisdiction.  We REVERSE and REMAND.

**I.**

The individual plaintiffs are a part of a group of individuals who allege that they were illegally stopped, searched, and/or detained by officers of the United States Border Patrol for the Sandusky Bay Station in Ohio, based upon their Hispanic appearance, race and ethnicity.   The two organizational plaintiffs are organizations that advocate on behalf of migrant workers.   The defendants are the United States Border Patrol, the Department of Homeland Security, and a number of the Border Patrol's officers (the "federal defendants").

The district court summarized the factual allegations as follows:

> The United States Border Patrol is primarily responsible for patrolling international borders between Ports-of-Entry, including the 158-mile stretch between Ohio and Canada.   The Border Patrol's objectives include apprehending terrorists and weapons illegally entering the United States, deterring illegal entry, reducing crime in border communities, and identifying individuals in the United States without proper papers.   The Border Patrol station pertinent to this case is the Sandusky Bay Station ("SBY"), which opened in February, 2009.   This station is accountable for carrying out Border Patrol day-to-day duties and responsibilities, including planning and conducting operations in Ohio.
>
> In November, 2010, the Border Patrol created a Primary Operational Domain ("POD") for SBY, which is "the area within a Sector's geographically delineated area of operational responsibility where stations routinely plan for and conduct daily operations which directly support the Sector's primary enforcement efforts."   In other

words, the POD is where a station sends its routine, daily patrols; for SBY, this stretches from Lucas County to Cuyahoga County.

Plaintiffs argue the Border Patrol "has strayed far from its stated mission of protecting the country's northern border from 'transnational threats.'" According to Plaintiffs, SBY agents use Hispanic appearance to initiate enforcement action. Plaintiffs note that in the three years SBY has been open, between 61.8% and 85.6% of those apprehended have been Hispanic, with "an alarming use of racial slurs" by agents in official Border Patrol correspondence; and the two highest ranking SBY agents are unable to "consistently articulate race-neutral basis for stopping and detaining suspected unauthorized aliens." The heart of Plaintiffs' theory in this case is that "SBY patrols the area for suspicious persons with a deliberate focus on Hispanic persons as is demonstrated both by its organizational culture of utilizing dehumanizing language when describing Hispanic persons and . . . by the disparate impact experienced by Hispanic persons in Ohio."

*Muniz-Muniz v. United States Border Patrol*, No. 3:09-cv-2865, 2012 WL 5197250, at *1 (N.D. Ohio Oct. 19, 2012).

Plaintiffs filed their original class action complaint on December 10, 2009, seeking equitable relief and monetary damages under *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971) and 42 U.S.C. §§ 1983, 1985, and 1986. The original complaint named as defendants the chief of the Border Patrol's district sector, which oversees the Sandusky Bay Station, and 15 "John Doe" Border Patrol agents in their official and individual capacities and alleged that the Border Patrol agents had engaged in a practice of racial profiling of Hispanics in violation of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, and the Fourth and Fifth Amendments. The complaint included allegations of a conspiracy between the Border Patrol and three local municipalities, their police chiefs and individual officers, to violate the civil rights of Hispanics by profiling them for stops, seizures and detentions and for violations of the Fourth and Fourteenth Amendments.

Three months after filing the original complaint, plaintiffs filed a first amended complaint naming the Border Patrol, Customs and Border Protection, Department of Homeland Security, and additional Border Patrol agents in their individual and official

capacities. The first amended complaint added the Administrative Procedures Act ("APA"), 5 U.S.C. § 702, as an additional source of jurisdiction. The defendants filed motions to dismiss. The federal defendants asserted lack of standing and lack of subject matter jurisdiction, arguing that a plaintiff can only challenge "final agency actions for which there is no adequate remedy in a court" and that the APA does not waive sovereign immunity with regard to constitutional torts or negligence actions. The plaintiffs requested an opportunity to complete discovery and the district court denied the motions to dismiss and permitted discovery. The court stated that it was "skeptical" whether it had subject matter jurisdiction, noting that "the APA remedies under § 702 must be paired with other jurisdictional statutes to waive sovereign immunity . . . [and the INA] do[es] not support a private right of action."

At the urging of the district court in an effort to simplify and expedite the discovery process, plaintiffs agreed to dismiss without prejudice their claims against the local law enforcement agencies and officers and their claims for monetary damages. Plaintiffs retained the express right to file an amended complaint reasserting the dismissed claims. In February, 2012, after some discovery in the case, plaintiffs were granted leave to file a second amended complaint reasserting the previous claims against the local police agencies. Plaintiffs ultimately settled all their claims with the local agencies. After the district court denied plaintiffs' request to file a third amended complaint to add claims under the Federal Tort Claims Act ('FTCA"), 28 U.S.C. § 2671 *et seq.*, the federal defendants renewed their motion to dismiss, or in the alternative for summary judgment, arguing that the court lacked subject matter jurisdiction because the United States had not waived sovereign immunity under the APA and that plaintiffs lacked standing. The district court granted the motion to dismiss, determining that it lacked subject matter jurisdiction because plaintiffs had failed to establish a waiver of sovereign immunity. It did not address the standing issue raised by the federal defendants.

**II.**

We review *de novo* the dismissal of a complaint for lack of subject matter jurisdiction.  *Hamdi ex rel. Hamdi v. Napolitano*, 620 F.3d 615, 619 (6th Cir. 2010) (citing *Davis v. United States*, 499 F.3d 590, 593-94 (6th Cir. 2007)).  Without a waiver of sovereign immunity, a court is without subject matter jurisdiction over claims against federal agencies or officials in their official capacities. *Reed v. Reno*, 146 F.3d 392, 397-98 (6th Cir. 1998).

**III.**

Plaintiffs challenge the district court's holding that it lacked subject matter jurisdiction over plaintiffs' claims for prospective, non-monetary, injunctive relief because there was no waiver of sovereign immunity.  More specifically, plaintiffs take issue with the district court's conclusion that although the United States has waived its immunity for non-monetary damages under § 702 of the APA, plaintiffs must also show that their claims for relief seek judicial review of agency action as defined by § 704 of the APA.  The federal defendants, however, argue that the court should not consider the merits of plaintiffs' argument because they did not raise it in the district court.  They argue, alternatively, that this Court should affirm on the grounds that plaintiffs lack standing to present or to pursue their equitable claims.

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *Munaco v. United States*, 522 F.3d 651, 652-53 (6th Cir. 2008) (quoting *United States v. Mitchell*, 463 U.S. 206, 212 (1983)).  In other words, "[t]he United States cannot be sued at all without the consent of Congress." *Block v. North Dakota,* 461 U.S. 273, 287 (1983).  Sovereign immunity "extends to agencies of the United States" or "federal officers [acting] in their official capacities." *Whittle v. United States*, 7 F.3d 1259, 1262 (6th Cir. 1993); *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994).  A waiver of sovereign immunity may not be implied and exists only when Congress has expressly

waived immunity by statute. *United States v. Nordic Village, Inc.,* 503 U.S. 30, 33-34 (1992).

Before we can address the question whether § 702 of the APA waives sovereign immunity for plaintiffs' claims, we must first address the federal defendants' argument that we should not address the issue on the merits because plaintiffs have raised their argument for the first time on appeal. We conclude that the federal defendants' argument lacks merit because it is factually incorrect. Plaintiffs did in fact raise the argument before the district court. Plaintiffs stated their reliance on § 702 in a number of pleadings in the district court, although not as clearly as they could have. In the first amended complaint, the plaintiffs specifically alleged that the district court had subject matter jurisdiction under a number of federal statutes, including 5 U.S.C. § 702. In their response to the second motion to dismiss, plaintiffs mention § 702 as the source of a broad immunity waiver several times, specifically stating that their claims for injunctive and declaratory judgment "fit within the waiver [of § 702] under the APA."

The case relied on by the federal defendants, *Local 3-689, Oil, Chemical & Atomic Int'l Union v. Martin Marietta Energy Sys., Inc*., 77 F.3d 131 (6th Cir. 1996), is inapposite. *Local 3-689* is distinguishable for several reasons. First, the plaintiff in *Local 3-689* attempted to raise an APA claim for the first time on appeal; here, plaintiffs identified the APA, and specifically § 702, as a basis for jurisdiction in multiple filings in the district court. Second, *Local 3-689* was decided before this Court's *en banc* determination in *United States v. City of Detroit*, 329 F.3d 515 (6th Cir. 2003), discussed in further detail below.

It follows then that neither the failure of plaintiffs to raise the argument that § 702 provides a waiver of sovereign immunity for their claim against the Border Patrol, nor their lack of clarity in raising the issue, precludes our review of the district court's holding that § 702 does not waive immunity unless the requirements of § 704 are also met. Our holding on this issue is largely dispositive of the appeal given that the federal defendants do not now argue that the text of § 702 limits its scope to "agency action" as defined in § 704 of the APA, or "final agency action," for which § 704 directly provides

the right to judicial review.  In addition, counsel for the federal defendants conceded at oral argument that, unless the federal defendants prevail on their waiver claim, the district court's holding was likely in error.

This Court has not previously addressed specifically the interplay between § 702 and § 704 of the APA.  However, we now join all of our sister circuits who have done so in holding that § 702's waiver of sovereign immunity extends to all non-monetary claims against federal agencies and their officers sued in their official capacity, regardless of whether plaintiff seeks review of "agency action" or "final agency action" as set forth in § 704.

The APA "sets forth the procedures by which federal agencies are accountable to the public and their actions subject to review by the courts."  *Franklin v. Massachusetts*, 505 U.S. 788, 796 (1992).  Section 702 of the APA provides in relevant part:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.  An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

5 U.S.C. § 702.  The second sentence of § 702 was added to the APA in the 1976 amendments, by which Congress sought to remove "technical barriers to the consideration on the merits of citizens' complaints against the Federal Government, its agencies, or employees."  *See Treasurer of New Jersey v. United States Department of Treasury,* 684 F.3d 382, 397 (3d Cir. 2012) (quoting H.R. Rep. No. 94-1656, at 3 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6121, 6123).  The Supreme Court later explained that "the 1976 amendment to § 702 was intended to broaden the avenues for judicial review of agency action by eliminating the defense of sovereign immunity in cased covered by the amendment."  *Bowen v. Massachusetts*, 487 U.S. 879, 891-92 (1988).

Against the backdrop of this history, our *en banc* court considered the question of whether § 702 is a general waiver of sovereign immunity for suits against the United States in *United States v. City of Detroit*.  We rejected a restrictive reading of § 702 which would have limited the § 702 waiver only to complaints filed under the APA, noting that the Sixth Circuit had previously applied the waiver of sovereign immunity in § 702 in cases under statutes other than the APA.  *City of Detroit*, 329 F.3d at 521 (citing *A. E. Finley & Assocs., Inc. v. United States*, 898 F.2d 1165, 1167 (6th Cir. 1990) and *Newsom v. Vanderbilt University*, 653 F.2d 1100, 1107 (6th Cir. 1981)); s*ee also Warin v. Director, Department of the Treasury*, 672 F.2d 590, 592 (6th Cir. 1982) (holding that § 702 operates as a waiver of the sovereign immunity defense for equitable actions seeking nonstatutory review of agency actions under 28 U.S.C. § 1331 which confers federal question jurisdiction on the district courts); *Ghandi v. Police Dep't of the City of Detroit*, 747 F.2d 338, 343 (6th Cir. 1984) ("Although amended section 702 eliminates the defense of sovereign immunity in actions for specific, non-monetary relief, Congress did not alter the existing law barring the recovery of money damages against the United States.").

The district court recognized as much, acknowledging that "the United States 'has waived its immunity with respect to non-monetary claims' under the APA," and that § 702's "waiver of immunity applies in cases brought under the APA, as well as other federal statutes." 2012 WL 5197250, at *4 (citing *A.E. Finley & Assocs., Inc.*, 898 F.2d at 1167).  The district court, however, went further by requiring plaintiffs to "satisfy 5 U.S.C. § 704, which limits the types of actions reviewable under the APA," by identifying either agency action made reviewable by statute or final agency action for which there is no other adequate remedy.  *Id.* (citing 5 U.S.C. § 704).  That was error.

As noted above, this Circuit has not specifically addressed the interplay between § 702 and § 704 of the APA where a plaintiff seeks non-monetary damages against the United States.  Other circuits have and they are unanimous in their conclusion that a plaintiff who seeks non-monetary relief against the United States need not also satisfy the requirements of § 704 of the APA before there is a waiver of sovereign immunity.

For instance, in *Treasurer of New Jersey v. United States Dep't of Treasury,* several states sued to recover proceeds of matured but unredeemed United States Savings Bonds from the United States Treasury. The United States raised an argument similar to that adopted by the district court here, that is, that the scope of the waiver of sovereign immunity under § 702 is limited to "final agency action" as defined by § 704. 684 F.3d at 397. The Third Circuit rejected the argument, holding that the waiver of § 702 extends to all non-monetary claims against federal agencies and their officers, regardless of whether plaintiff seeks review of an agency action or final agency action under § 704. *Id* at 399; *see also Michigan v. U. S. Army Corp of Eng'rs*, 667 F.3d 765, 775 (7th Cir. 2011) ("[T]he conditions of § 704 affect the right of action contained in the first sentence of § 702, but they do not limit the waiver of immunity in § 702's second sentence."); *Trudeau v. Federal Trade Commission*, 456 F.3d 178, 187 (D.C. Cir. 2006) (stating section 702's waiver of sovereign immunity "is not limited to APA cases" and applies "regardless of whether the elements of an APA cause of action are satisfied"); *Red Lake Band of Chippewa Indians v. Barlow*, 846 F.2d 474, 476 (8th Cir. 1988) ("[S]ection 702 [waiver] is not dependent on application of the procedures and review standards of APA. It is dependent on the suit against the government being one for non-monetary relief."); *Delano Farms Co. v. California Table Grape Com'n*, 655 F.3d 1337, 1344 (Fed. Cir. 2011) ("We hold that section 702 of the APA waives sovereign immunity for non-monetary claims against federal agencies . . . . It is not limited to 'agency action' or 'final agency action,' as those terms are defined in the APA.").

The federal defendants ask us to affirm the district court's finding that it lacks jurisdiction on an alternative ground—that appellants lack standing to pursue their equitable claims because they "failed to demonstrate to the district court [that] there is a persistent pattern of police misconduct, and a substantial risk of imminent, irreparable harm without court intervention." The federal defendants also urge us to find that they are entitled to summary judgment because plaintiffs fail to demonstrate a genuine issue of fact. The district court has not considered either of these issues, and we prefer that the issues be decided in the first instance by the district court. We therefore decline the invitation to address these issues in this proceeding.

**IV.**

For the reasons set forth herein, we REVERSE the district court and REMAND the case for further proceedings consistent with this opinion.